# Thomas's Appeal.

A mortgage given by two tenants in common, as security for a partnership debt, is discharged by payment of the debt; and cannot be kept alive as a security for an individual debt of one of the mortgagors to the mortgagee, even as against the interest of the debtor.

APPEAL from the District Court of *Philadelphia.*

This was an appeal by William B. Thomas, from the decree of the District Court, distributing the proceeds of a sheriff's sale of the real estate of Joseph Brown and William M. Godwin.

In 1851, the firm of Brown & Godwin, then composed of Joseph Brown, William M. Godwin, and Francis A. Godwin, borrowed certain moneys from George McHenry & Co.; and to secure the debt, two of the firm, Joseph Brown and William M. Godwin, gave a mortgage, to secure the joint bond of all the partners, for $4000, upon a house and lot in Pine street, of which the mortgagors were tenants in common, subject to a prior mortgage to John Pechin upon the same premises.

On the 1st October 1854, the debt due by the firm of Brown & Godwin to George McHenry & Co. was paid; and on the 12th December 1854, Brown & Godwin made a general assignment for the benefit of their creditors to William B. Thomas, the appellant. Prior to this assignment, however, William M. Godwin had become individually indebted to George McHenry & Co. to an amount exceeding $4000; and without the knowledge or consent of Joseph Brown, his co-mortgagor, he made a parol agreement

with George McHenry & Co. that they should hold the $4000 mortgage, as security for his individual indebtedness.

In 1856, the mortgage to John Pechin was sued out, and the premises were sold by the sheriff. The balance of the proceeds of the sale, after payment of Pechin's mortgage, was paid into court, and an auditor was appointed to distribute the fund, which was claimed by William B. Thomas, the assignee, and by George McHenry & Co.

The auditor (Clement B. Penrose) awarded the fund to the assignee; exceptions were filed by George McHenry & Co.; the court below reversed the decision of the auditor, and decreed the fund to be equally divided between the assignee and George McHenry & Co.; from which decree this appeal was taken.

The grounds taken by the respective parties will best appear in the opinions delivered in the District Court.

The following is the opinion of the court, delivered by HARE, J. —" The simple question before us in this case is, whether a mortgage, given by two tenants in common, as a collateral security for a joint debt, other than and not expressed in the bond and mortgage, can subsequently be appropriated in whole or in part, by one, as security for the payment of a debt due by him severally, and thus survive as a lien on his share of the land, after the extinguishment of the demand which it was originally meant to secure. Were the question *res integra*, or were we making a new system, there might be much reason for holding that the amount due on a mortgage, and the question whether it has been paid, should depend solely on what appears on the face of the mortgage or of the bond, and it might be said to be a violation of the statute of frauds, and of the rules of evidence, to permit the effect of a written instrument, solemnly executed for the purpose of binding land, to be varied or controlled by oral or extrinsic evidence. But the step once taken, of permitting a mortgage to be held as security for future or collateral undertakings, not expressed in its terms, I am at a loss to see, why it should be limited to the advances which it was originally meant to secure, and should not be permitted to extend to others, made at a subsequent period. Suppose a mortgage given as security or indemnity for the endorsement of a note, which, on falling due, is taken up by another note taken or endorsed, or a sum of money advanced on the faith of the mortgage, must we hold that the mortgage is extinguished, by the very transaction which was meant to give it continuance? Under these circumstances, the mortgage still subsists in full force as a common law conveyance—the condition of defeasance has not been performed; there is no release on reconveyance, nor any satisfaction of record which, under our system, is equivalent to a reconveyance. If the mortgagor can claim to hold the land free from the lien of the debt, it can only be on the ground of a legal

[Thomas's Appeal.]

or equitable payment. At law there is no payment, because the bond itself has not been paid, and equity certainly would not view the extinguishment of the note as payment, contrary to the justice of the case, and the meaning of the parties. I do not speak of the case where the amount or balance due by the mortgagor is fully paid off, with the express or implied intent of satisfying the mortgage, and when the creation of the new debt, or the subsequent advance is an after thought, and mean to confine my remarks to those cases where one advance or debt is substituted for another, with a view of prolonging, and not of taking away, the vitality of the instrument on which the creditor relies for security.

" Here the mortgage is not paid, because payment is a question of agreement and intention, and the effect of the transaction is a mere continuance of the obligation of the bond in the same form, although for a somewhat different purpose. Such, at least, is the view taken by the majority of the court, who are consequently of opinion, that the agreement, by which Godwin's share of the mortgaged premises was to stand as a security for his separate debt, was valid, and leaves the mortgage in full force, so far as Godwin is concerned, although paid and satisfied as to Brown. The exceptions to the report are sustained, so far as they relate to one-half the fund in court, which is awarded to McHenry, the residue going in the course intended by the auditor."

Mr. Justice STROUD dissented from the opinion of the court, and delivered a separate opinion, from which the following extract is taken :—

" The only claimants before us are McHenry and Thomas.

" The claim of McHenry has been stated to be that of the owner of a mortgage on the property sold. This mortgage was given several years before the assignment to Thomas. And if it was a lien at all on the property sold at the time of the sheriff's sale, it was the first and only one, and being a sum larger than the whole fund in court, McHenry is entitled to it.

" The grounds on which the claim rests appear to be these :—

" Brown & Godwin, the defendants, were tenants in common in equal moieties in fee of the real estate, being a house and lot situate on the north side of Pine street, in this city. They were also co-partners in trade under the firm of Brown & Godwin. The co-partnership became indebted to a considerable amount to the firm of George McHenry & Co. To secure them in respect to this indebtedness, Brown & Godwin gave them four mortgages on real estate, all of which they held as tenants in common in fee in equal proportions. At the time when these mortgages were thus given, Godwin, one of the defendants, was indebted to the firm of George McHenry & Co. His indebtedness was added to, from time to time afterwards, and was larger at the time of the

assignment to Thomas, and at the time of the sheriff's sale, than the fund in court; the assignment for the benefit of creditors to Thomas, was made by both Brown & Godwin, and comprehended, not only all their partnership property but all the real estate which they owned as tenants in common.

"Before it was executed, an agreement was made between the defendants and George McHenry & Co., by which the latter gave up the mortgages on all the properties except that on Pine street, being the property sold by the sheriff.

"Afterwards, and before the assignment to Thomas, the defendants and George McHenry & Co. came to an agreement, by which George McHenry & Co. were to receive a conveyance of two of the properties mortgaged to them originally by Brown & Godwin, as before mentioned at the price of $15,300. Deeds were made accordingly for this consideration. By arrangement of the parties, the name of George McHenry & Co. was inserted on the deeds as the grantee. The auditor states that, 'the amount of the indebtedness of Brown & Godwin (the firm) to McHenry & Co. was not then known, but in point of fact was considerably less than the price at which these properties were taken by the latter.'

"From the auditor's report, it appears 'that Godwin was the financial manager of the firm of Brown & Godwin, that the dealings between it and George McHenry & Co. were carried on almost entirely by him; that at the time when George McHenry & Co. gave up the three mortgages, as already mentioned, it was upon the solicitation of Godwin, who stated that the proceeds would be applied not only to the liquidation of the debt of Brown & Godwin as a firm, but of his own indebtedness; that at times, when he had been pressed by George McHenry & Co. to pay off both the firm and his own debt, he would answer that they had sufficient securities to pay off both.' The auditor also states it was by his promise that the amount should be credited on both his individual and the firm indebtedness, that George McHenry & Co. were induced to take the properties before mentioned for the fifteen thousand three hundred dollars.

"These promises and suggestions of Godwin's were made without the knowledge or consent of Brown, the other defendant.

"The auditor has condensed the result of his investigation in the following summary:

"1st. That the mortgaged property belonged to Godwin & Brown, individually, the firm having nothing to do with it.

"2d. That the mortgages were given to secure firm indebtedness, and not the individual indebtedness of Godwin.

"3d. That the amount at which McHenry & Co. took the Manayunk and Chester county properties was greater than the firm indebtedness.

"4th. That the amount was credited to the firm indebtedness.

[Thomas's Appeal.]

" 5th. That Godwin then and at that time promised to credit his individual indebtedness to the account of McHenry & Co., and the books of the firm of Brown & Godwin, and that the mortgage should remain as a security for it.

" 6th. That McHenry & Co., after taking the properties returned to the firm of Brown & Godwin all other securities, (notes, &c.,) and 'retained the mortgage on house on Pine street, as security to cover the balance that should be found due, as soon as Godwin's account should be adjusted,' he having promised to make it firm indebtedness.

" 7th. That Godwin's co-tenant and co-mortgagor, Joseph Brown, did not know of the promises on his part, nor did he ever agree that the mortgage might remain to secure his individual indebtedness.

" That the firm of Brown & Godwin neither knew of nor consented to the charging them with this individual debt, and that in point of fact it never was so charged. These leading facts are therefore proved by the auditor :

" 1st. That the property sold by the sheriff belonged to the defendants as tenants in common.

" 2d. That it was mortgaged by them by a written instrument in the usual form, under seal, to McHenry & Co., to secure a partnership debt.

" 3d. That this partnership debt was fully paid before the defendants made an assignment to Thomas for the benefit of the creditors.

" 4th. That the claim set up by McHenry & Co. to the money in court, rests entirely upon an oral agreement between Godwin and McHenry & Co., intended by Godwin to pledge the property sold by the sheriff as a security for the payment of his individual debt, of which intention and act Brown had no knowledge or in any way consented.

" Upon these facts, one question only, in my judgment, need be considered, namely, can a mortgage of real estate be created by oral agreement ?

" That a mortgage cannot be created in this manner has been long since authoritatively settled by our Supreme Court : Bowers *v.* Oyster, 3 *Penn. Rep.* 239. In that case the oral agreement to mortgage was clearly shown. The act was a deliberate one, and the purpose just. The consideration was a debt of the full value of the land. Possession was given comtemporaneously with the agreement, and was continuously afterwards retained by the creditor.

" Yet in ejectment by a purchaser claiming title under the supposed mortgagor, it was held, that the plaintiff should recover. The decision is founded expressly and entirely upon the invalidity of an oral mortgage.

" The conclusion of the auditor, awarding the whole fund to the

[Thomas's Appeal.]

assignee of Brown & Godwin, for the benefit of the creditors is, in my opinion, right, and the exception to it by McHenry & Co. should be dismissed."

*Paul* and *Guillou*, for the appellant.

*A. H. Smith*, for the appellees.

The opinion of the court was delivered by

THOMPSON, J.—In Pennsylvania a mortgage is so entirely a security for money, although in form a common law conveyance, that payment or performance of the condition as fully satisfies it as it does a judgment: Asay *v.* Hoover, 5 *Barr* 21. We seek no reconveyance of the premises or formal release of the condition as a means of satisfying it. Payment is a good and equitable plea, and as effectual to it as to any other obligation: Ackla *v.* Ackla, 6 *Barr* 228.

In the case in hand, the assignee of Brown & Godwin, in effect, interposes this plea, so far as Brown is concerned, and with just the same legal consequences as if he himself, never having assigned, were interposing it. The plea, if made out, would defeat the mortgage, and of course its lien. Brown & Godwin were tenants in common of the property when they executed the mortgage to McHenry & Co. Its purpose was to secure to the latter the payment of a debt due by the firm of Brown, Godwin & Co., of which they were members. In process of time the debt, for which the mortgage was given as collateral, was paid off. Instead of satisfying it, Godwin agreed with McHenry & Co., to whom he was indebted in his individual capacity, that they should hold the mortgage as collateral, to secure that indebtedness. To effect this he was to have McHenry & Co. credited on his firm books with the amount of his debt, but this he never did. It was proved by the auditor that Brown was an entire stranger to the arrangement. Under these circumstances, the question for decision is, whether Godwin the co-tenant of the property could keep the mortgage on foot for his individual benefit, and change its entire purpose without the assent or knowledge of Brown. A simple statement of the proposition is the best refutation of such a position. It was contended for here, and had been in the court below, but was there ruled, and rightly so, as untenable.

The court, however, thought that the mortgage might be kept on foot to the extent of Godwin's interest in the property, and decided in accordance with this view of the case. But it is difficult to see how this could be done without prejudicially involving Brown's interest. In case of proceedings to recover the money on the mortgage under such arrangement, the *sci. fa.* would be against the parties to it—the judgment would have to follow the writ—the *levari*

[Thomas's Appeal.]

*facias,* the judgment, and the sale would be of the premises against which judgment was recovered. So that the effect of keeping it on foot would, in case of adverse proceedings, be to sell Brown's property to reach the lien against Godwin, and that without the assent, express or implied, of the former. This test proves, we think, that McHenry & Co. had no security *under the mortgage* for Godwin's individual debt, and was not entitled to any portion of the money in court.

In another aspect of the case, we think the decision of the majority of the court below was wrong. The mortgage was given by two, as tenants in common for a specific purpose. One of the parties to it attempts to change its condition, in fact, to make it a new security for an entirely different purpose, it having subserved the object of its creation, and to limit its extent to an undivided moiety instead of an entirety, with an indefinite duration as to time. All this was to rest in parol, and would constitute in fact, if valid, an oral mortgage. It is settled that no such security exists in Pennsylvania: Bowers *v.* Oyster, 3 *P. R.* 240. Nor does our law tolerate secret liens: Shitz *v.* Dieffenbach, 3 *Barr* 253; which is another objection to the grounds taken by the appellees.

Now to wit, February 26th, 1858.—Decree reversed at the cost of the appellee, and the auditor's report confirmed, and distribution decreed accordingly.