## Downs *v.* Scott, Appellant.

Argued March 20, 1963. Before RHODES, P. J., ER-VIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Sheldon Tabb,* for appellant.

*Jerome Taylor,* for appellee.

OPINION BY FLOOD, J., June 12, 1963:

The defendant asks a new trial for three reasons: (1) the court below abused its discretion in refusing the defendant's request to withdraw his waiver of jury trial, (2) the verdict was against the weight of the evidence, and (3) the damages awarded were excessive.

1. A waiver of jury trial was endorsed upon the plaintiff's complaint. In such case, if the defendant desires a jury trial, Rule 1025*(b) of the Court of Common Pleas of Philadelphia County requires him to endorse a demand for a jury trial upon his answer or his praecipe for appearance. The defendant's praecipe

contained no demand for a jury trial and therefore under the rule constituted an agreement for a trial without a jury.

Later the defendant's counsel filed a petition requesting a jury trial, averring that he was outside the country at the time when his appearance was filed by his secretary who inadvertently, and contrary to his instructions, failed to demand a jury trial. The petition was dismissed.

When the case was later called for trial, the defendant made no further demand but went to trial before Judge DOTY without a jury.

Since mere inadvertence of counsel or his secretary is relied upon by the defendant, whether his petition should be granted is a matter for the discretion of the court below. Here a relegation of the case to the jury trial list would have caused a substantial delay of the trial. We cannot say that the court below abused its discretion in refusing a jury trial following a waiver, when the ground relied upon was that the defendant's counsel, an active trial lawyer, upon leaving his office to go abroad, did not make proper arrangements for filing pleadings or appearances as they should have been filed or placed this duty in the hands of a person who did not know the rules of court or was not careful to follow them.

The defendant contends that his mere failure to endorse his entry of appearance with a demand for jury trial cannot properly be construed as an "agreement filed" to have the case tried without a jury, and that it violates his constitutional rights to a jury trial to so construe it. However, both the Supreme Court and this court have held that a jury trial may be waived by conduct as well as by agreement filed. In *Cohen v. Sykes*, 180 Pa. Superior Ct. 427, 118 A. 2d 208 (1956) we held that where through an error of the prothonotary the case was placed upon the non-jury list even

though the defendant had filed a written demand for a jury trial, and the defendant went to trial without any further effort to seek a jury trial, he could not thereafter obtain a new trial. In that case this court said: "It is well settled that the right to a jury trial may be waived, either expressly or by implication". In *Ondick v. Ondick*, 399 Pa. 432, 160 A. 2d 708 (1960), the Supreme Court held that the trial of the case by the court without a jury after the defendants had failed to file any pleadings or to appear for the trial was held proper. In neither of these cases was there a written agreement of waiver filed by the defendant.

It is the right to a jury trial that is guaranteed by the Constitution and when there is a reasonable method of waiver provided, a party who waives the right in this method cannot contend, after he has lost the case, that he did not legally waive it. *Rennekamp Supply Company v. Valicenti*, 178 Pa. Superior Ct. 13, 112 A. 2d 438 (1955). The method provided in Rule 1025*(b) is a reasonable one which has long worked well in practice, and it does not violate the defendant's constitutional rights.

2. The objection that the verdict for the plaintiff was against the weight of the evidence was based chiefly upon certain alleged contradictions and unbelievable statements in the testimony presented by the plaintiff. The defendant argues that testimony that he was being pushed was incredible in view of the further testimony that his rear axle was broken, one of his rear wheels was coming off and his brakes were not working. He contends that no sane man has a vehicle pushed when brakes are not working or his rear axle is broken and one of his rear wheels is off. This is evidently meant to suggest completely inconsistent and incredible testimony on the part of the plaintiff and her witnesses. We do not so view the evidence. The plaintiff's witness, Uhl, testified that the defendant was being pushed. He

also testified that the defendant said: "I didn't have no brakes." In a statement signed by the defendant he said that he had a broken rear axle. The defendant denied making either admission. Obviously this was for the fact-finder and his finding upon it will not be reversed by the appellate court.

The testimony of Mrs. Downs and Mr. Scott is in agreement that at the time of the collision the plaintiff had stopped for a red light and the defendant struck the back of her car. She says that she had been stopped for about a minute before the collision. He says that as the two cars approached the intersection the light turned yellow and that it could not have been a second after she stopped that the collision took place. The defendant's negligence was not contested. Even though there was evidence that the light remained red for much less than a minute, the testimony raised a question of credibility as to the plaintiff's contributory negligence, which the trial judge resolved in her favor.

3. The defendant contends that the damages were excessive and stresses particularly the plaintiff's failure to take proper measures to mitigate her damages. He relies upon testimony that she made only three visits to the office of Dr. Winokur, her family physician and that Dr. Beller, to whom Dr. Winokur referred her, testified that she made only three visits to his office and she came back for physiotherapy only once after her first visit to him, although he recommended physiotherapy, including diathermy, ultrasound and massage, under medical auspices, together with self-applied heat and rotation exercises at least three times a day and, "if time permits, hourly". Dr. Beller testified that it would not be necessary for her to see him every time as she could have received the treatment from his physiotherapist.

The plaintiff testified that on her second visit to Dr. Winokur, her family physician, he said he could

do nothing for her and referred her to Br. Beller, an orthopedist, that she saw Dr. Beller about four times, and had seven or eight appointments which were cancelled because he was called out on surgery. She testified that she applied heat at home in the form of Bengué or liniment, and that she followed the exercises which Dr. Beller prescribed.

Dr. Beller, when being examined as to her failure to come back for physiotherapy, testified: "I am beginning to feel very definitely, sir, that my best efforts may well have failed on a conservative basis and that this patient may have merely saved herself the long course of conservative therapy that may well have failed". He stated that he was led to that conclusion by the fact that she was still in the same difficulty objectively now as she was when he saw her in December, 1961. The defendant's doctor testified upon cross-examination that there are cervical strains that are not helped by diathermy although it was his opinion that the plaintiff would have been helped by it.

Whether under these circumstances the plaintiff was negligent in failing to take proper measures to mitigate her suffering is a question of fact for the trial judge. Under the testimony here, it cannot be said as a matter of law that she failed to do so. This was not a case of infection or aggravation of the injury by failure to seek medical treatment or follow medical advice. The defendant refers to §918(1) of the Restatement, Torts to the effect that "a person injured by the tort of another is not entitled to recover damages for such harm as he could have avoided by the use of due care after the commission of the tort". However, as appears in Comment c to that section: "He is required to exercise no more than reasonable judgment or fortitude; nor, if different courses of action are open to him is he required, as a condition to obtaining full damages, to chose that one which events later show to

284

have been the best". Under the testimony in this case, the question whether the plaintiff was reasonable in not obtaining more medical help than she actually did is one for the determination of the trier of the facts.

The other matters raised have to do with the credibility of the testimony as to damages and excessiveness of the verdict. As to these, the trial court's discretion has not been abused and they constitute no basis for reversing its refusal to grant a new trial.

Judgment affirmed.