Crown Construction Company *v.* Newfoundland
American Insurance Co., Ltd., Appellant.

Argued March 16, 1966; reargued September 27, 1967. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*John F. Naulty,* with him *George M. Spence,* and *Spence, Custer, Saylor, Wolfe & Rose,* for appellant.

*Norman A. Krumenacker, Jr.,* with him *Gleason & Krumenacker,* for appellee.

OPINION BY MR. JUSTICE JONES, March 15, 1968:

On June 1, 1964, Crown Construction Company (Crown), instituted an assumpsit action against New-

foundland American Insurance Company, Ltd. ·(Newfoundland), in the Court of Common Pleas of Cambria County. Service of process was made upon the Insurance Commissioner of the Commonwealth on June 3, 1964.[1]

On June 18, 1964, Newfoundland petitioned for removal of this action to the U. S. District Court for the Eastern District of Pennsylvania[2]; and, on the same day, mailed a copy of the removal petition to Crown's counsel. On June 22, 1964, Newfoundland's counsel mailed a copy of the removal petition to the Prothonotary of Cambria County which was received on June 24, 1964. On June 23, 1964—the 20th day after service of the complaint in the state action—Newfoundland filed its answer to Crown's complaint in the U. S. District Court.

On June 25, 1964—23 days after service of the complaint in the state action—Crown filed a praecipe for a default judgment in the state court because of Newfoundland's failure to file an answer in the state court to Crown's complaint[3] and, on the following day, Crown obtained a rule on the Prothonotary of Cambria County to show cause why Newfoundland's removal petition should not be refused for filing.[4] On July 6, 1964—18

---

[1] See: Insurance Commissioner's certificate as shown by docket entries.

[2] The Act of Congress of June 25, 1948, c. 646, 62 Stat. 937, 28 U.S.C. §1441(a) provides ". . . any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, *to the district court of the United States for the district and division embracing the place where such action is pending.*" (Emphasis supplied). It is to be noted that Cambria County; wherein the instant action was pending, is in the Western, not the Eastern, District of Pennsylvania. This requirement relates to venue and not jurisdiction: *Polizzi v. Cowles Magazines, Inc.,* 345 U.S. 663, 665, 73 S. Ct. 900, 902 (1953).

[3] At that time the record was still in the state court.

[4] The grounds of this petition were: (a) Newfoundland had not paid to the Prothonotary the requisite fee for filing the copy

days after filing the removal petition in the federal court—Newfoundland, through resident counsel, paid the necessary fee and delivered to the Prothonotary a certified copy of the removal petition which was *then* filed in the state court. On August 3, 1964, Newfoundland filed in the state court an answer, containing new matter, to Crown's complaint.[5]

Meanwhile, in the federal court Crown filed a motion to remand the action to the state court. On December 14, 1964, the U. S. District Court remanded the action to the state court.[6] The basis upon which the court directed the remand was that Newfoundland had failed to follow the statutory mandate[7] that a copy of the removal petition must be filed *promptly* with the clerk [prothonotary] of the state court. The court stated, inter alia, ". . . [Newfoundland] has asserted no facts of record from which I can find that removal was validly effected."

On February 8, 1965—7 1/2 months after the entry of the default judgment—Newfoundland petitioned the state court to open the judgment and, thereafter, moved to strike off the judgment. The Court of Common Pleas of Cambria County entered an order refusing

---

of the removal petition; (b) Newfoundland's counsel did not endorse on the papers the name and address of counsel resident in Cambria County.

[5] Section 3 of the Act of May 20, 1949, P. L. 1491, 40 P.S. §1005.3 requires that an "unauthorized insurer", before filing any pleading in *any* action instituted against it, shall either (1) deposit with the prothonotary cash, securities or a bond to secure the payment of any judgment which may be rendered against it in such action or (2) procure a certificate of authority to transact business in Pennsylvania. Newfoundland did neither.

[6] The record upon which the federal court acted consisted of the removal petition, the motion to remand and Newfoundland's answer to that motion.

[7] The Act of Congress of May 24, 1949, c. 139, §83, 63 Stat. 101, as amended, 28 U.S.C. §1446(e).

either to strike off or to open the judgment. From that order Newfoundland now appeals.

In refusing to strike off the judgment, the court below found that the action had never been *effectively* removed from the state court and, therefore, when the default judgment was entered, the state court still retained its jurisdiction. In dismissing the petition to open judgment, the court below found that such petition had not been filed *promptly* and its delay had not been reasonably explained or excused.

On the reargument of this appeal, Newfoundland raised several issues: (1) at the time of entry of the default judgment, did the state court, in view of the removal proceedings, have *jurisdiction* to entertain a proceeding such as a praecipe for the entry of the default judgment; (2) was Newfoundland improperly denied an opportunity to present evidence that certain entries which appear in the state court docket were erroneous?

At the original argument of this appeal, another issue was presented. Newfoundland challenged the propriety of the entry of the default judgment on the ground that, if service of process had been made under the terms of the Unauthorized Insurers Process Act, supra, §2b, then this judgment was prematurely entered since, under that statute a judgment could not be taken until 30 days had elapsed after service of the complaint whereas the instant judgment was entered 23 days after service of the complaint. Responding to this contention, Crown took the position that service had not been effected under the authority of the statute but rather under express authority contained in Newfoundland's insurance policy which designated the Insurance Commissioner as *the agent* of Newfoundland and, thus, permitted resort to the ordinary rules for the service of process. Such argument brought Crown's position into direct conflict with Pa. R.C.P. 2180, which,

in the instant factual situation, would require personal service rather than service by registered mail as was made in this case. However, this question of defective service should have been raised by Newfoundland under Pa. R.C.P. 1017(b) (1) and it was not so raised. On the contrary, Newfoundland not only did not question the jurisdiction over its person by reason of defective service but it filed an answer on the merits. That jurisdiction over the person may be waived is clear: *Yentzer v. Taylor Wine Co.*, 409 Pa. 338, 342, 186 A. 2d 396 (1962) and authorities therein cited. Under Pa. R.C.P. 1032, Newfoundland's failure to raise the question of defective service, by way of preliminary objections, as well as its answer on the merits waived any defect in the service. Moreover, at the reargument of this appeal, Newfoundland did not urge any defect in service as a basis for a reversal of the instant order. However, we still must consider whether the service was made under the Unauthorized Insurer's Process Act, supra, or under the terms of the insurance contract for the purpose of determining whether the judgment was *prematurely* entered.

Whether when the default judgment was entered the state court still retained jurisdiction depends upon whether Newfoundland *at that time* had fully and strictly complied with the federal statute providing for the removal of actions from state to federal courts. A removal statute is subject to strict construction and its provisions must be strictly complied with before the jurisdiction of a state court can be ousted: *Kovell v. Pennsylvania Railroad Co.*, (N.D. Ohio), 129 F. Supp. 906 (1954); *Hamilton v. Hayes Freight Lines*, (E.D. Ky.), 102 F. Supp. 594 (1952). When a removal has been effected *in strict compliance with the statutory requirements*, then the state court's jurisdiction ceases and any further proceeding in the state

court is a nullity so long as the action is pending in the federal court.

The procedure for the removal of actions has been promulgated by the Congress.[8] Inter alia, the federal statute (28 U.S.C. §1446(e)) requires that *"Promptly after the filing of such [removal] petition and bond the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the [removal] petition with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded."* (Emphasis supplied). Unlike the prior law on the subject[9] which provided that, upon the filing, in due time, of the removal petition, with sufficient bond, the state court would lose jurisdiction to proceed further, the present federal statute provides that, in addition to filing, in due time, the removal petition with sufficient bond, the removing party must give *prompt* notice to the adverse party and *promptly* file a copy of the removal petition with the clerk of the state court before the state court loses its jurisdiction. Both the statutory language and case law indicate that, until *prompt* notice is given and a copy of the removal petition *promptly* filed with the clerk of the state court, the state court retains its jurisdiction: *Donlan v. F. H. McGraw & Co.,* (E.D. N.Y.) 81 F. Supp. 599 (1948); *Beleos v. Life and Casualty Insurance Co. of Tennessee,* (E.D. S.C.) 161 F. Supp. 627 (1956). In *Donlan,* supra, the court stated: "It is clear that it was not contemplated that the removal be considered complete until the requirements of subdi-

---

[8] The Acts of Congress of June 25, 1948, c. 646, 62 Stat. 937, 938, 939, amended May 24, 1949, c. 139, §§82, 83, 63 Stat. 101; July 25, 1958, Pub. L. 85-554, §5, 72 Stat. 415; September 29, 1965, Pub. L. 89-215, 79 Stat. 887, 28 U.S.C. §§1441-1446, inc.

[9] See: *Madisonville Traction Co. v. St. Bernard Mining Co.,* 196 U.S. 239, 25 S. Ct. 251 (1905).

vision (e) [28 U.S.C. §1466(e)] were complied with. It follows therefore that in the interim between the filing of the petition and bond by the defendant in the federal court, and the giving of notice to the plaintiff and the filing of a copy of the petition with the clerk of the state court, the plaintiff would be free to proceed with the action in the state court. He would in no sense be stayed." (p. 600). In *Beleos*, supra, it was held that the requirements of filing of petitions for removal with the clerk of the state court and the giving of notice to the adverse party were not "modal" or "formal" but mandatory conditions precedent to the termination of state court jurisdiction. The district court said "Subsection (e) is designed so that a State Court and a Federal Court cannot both have jurisdiction of the same case at the same time. Until the State Court loses jurisdiction, the Federal Court cannot acquire it." (p. 628).

In the case at bar, Newfoundland did not follow the mandate of §1446(e) and did not *promptly* file a copy of the removal petition with the prothonotary of the state court. The record clearly shows that Newfoundland did not file a copy of the removal petition with the prothonotary of Cambria County until 18 days after filing the removal petition in the federal court. That such filing fell far short of compliance with the mandate of §1446(e) was recognized by Judge JOSEPH S. LORD, III of the U.S. District Court who stated, in remanding this case to the state court, ". . . [Newfoundland] has not even come close to sustaining its burden of showing that the case was effectively removed. . . ." The federal court having taken the view that this action had never been *effectively* removed from the state court and no appeal having been taken from its order, we are bound by this ruling. See: *Supreme Lodge, Knights of Pythias v. Meyer*, 265 U.S. 30 (1924). At the time of entry of the default judg-

ment, the Court of Common Pleas of Cambria County retained jurisdiction over the action.[10]

Newfoundland next urges that the entry of the default judgment by Crown violated §2(d) of the Unauthorized Insurers Process Act (Act of May 20, 1949, P. L. 1491, §2(d), 40 P.S. §1005.2(d)). That statute, providing a method of substituted service of process upon insurers who are not authorized to do business within the Commonwealth, permits service of process upon an unauthorized insurer by leaving with the Insurance Commissioner or his deputy two copies of the process and the payment of a fee; that the Insurance Commissioner forthwith shall mail, by registered mail, a copy of the process to the unauthorized insurer; that, within 10 days thereafter, notice of such service upon the Insurance Commissioner and a copy of the process shall be sent by registered mail by the plaintiff or counsel to the unauthorized insurer; that the plaintiff or counsel shall file an affidavit of compliance with the statutory provision plus the unauthorized insurer's return receipt, on or before the date the unauthorized insurer is required to appear in court, with the prothonotary of the court in which the action is pending (§2(b)). Section 2(d) provides: "No plaintiff . . . shall be entitled to a judgment by default . . . until the expiration of thirty days from date of the filing of the affidavit of compliance [with §2(b)]."

It is Newfoundland's position that the instant complaint was filed on June 1, 1964, and sent by registered mail to the Insurance Commissioner on June 2, 1964; that Crown filed neither a return receipt nor an affidavit of compliance with the prothonotary; that the

---

[10] See: *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 73 S. Ct. 900 (1953); *Moss v. Atlantic Coast Line R. Co.*, 157 F. 2d 1005 (1946), cert. den. 330 U.S. 839, 67 S. Ct. 980 (1947).

default judgment was entered only 23 days from the date on which the Insurance Commissioner received the complaint. Upon this factual background Newfoundland submits that a proper default judgment could not be entered *if Crown relied upon the statute in effecting the service.*

Newfoundland overlooks both its policy of insurance and §2(e) of the statute. The latter provides: "Nothing in this section contained shall limit or abridge the right to serve any process, . . . upon any insurer in any other manner now or hereafter permitted by law". In the "Service of Suit Clause"—attached to the policy of insurance issued by Newfoundland to Crown and attached to the complaint filed in this action—in addition to agreeing that, in the event of failure to make payment of any amount claimed under the policy, Newfoundland, at the request of its insured, will submit to the jurisdiction of any court of competent jurisdiction in the United States and comply with all requirements necessary to give such court jurisdiction and, in addition to further agreeing that service of process might be made upon a certain firm at a certain address in New York, it was further stated: "Further, pursuant to any statute of any state . . . of the United States which makes provision therefor, Underwriters/ the Company/ies hereon hereby designate/s the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, . . ., as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured . . . arising out of this contract of insurance . . ., and hereby designate/s the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof."

Crown contends that it did not undertake to make the substituted service provided under the Act of 1949,

supra, but, instead, under the *express* authorization contained in the policy, made service upon the Insurance Commissioner as the attorney and agent of Newfoundland. If this be so, Crown would have the right to take a default judgment even though only 20 days had expired from the date of service of the complaint.

Our examination of the provisions of the clause, supra, convinces us that Newfoundland therein expressly authorized service of process to be made upon the Insurance Commissioner as its attorney and agent and an examination of this record indicates that the service attempted was not the substituted service contemplated by §2(b) of the statute but service under the terms of the insurance contract sanctioned by §2(e) of the statute. That being so, compliance with §2(b) and (d) was not required of Crown and the default judgment was not *prematurely* entered.

Lastly, Newfoundland argues that the court below abused its discretion in refusing to open the default judgment without giving it the opportunity to present evidence that certain docket entries in the state court were erroneous. Specifically, Newfoundland wants to show that its local counsel was advised that a judgment had not been entered but only a praecipe for the entry of a default judgment and that, even though there was a docket entry "Judgment is entered in favor of the plaintiff and against defendant for failure to file an Answer", such entry was not signed by the Prothonotary whereas the entry of the praecipe is signed by the Prothonotary. The purpose of such evidence would be to show that Newfoundland's counsel was not aware, until January 25, 1965, that a judgment had been entered.

We have examined the docket entries in the court below. In the continuance docket the following entry appears: "25 June, 1964, Praecipe for Judgment filed by Gleason & Krumenacher, Attorneys for Plaintiff,

Judgment is entered in favor of Plaintiff and against the defendant for failure to file an answer.

Amount: $16,492.97                    Interest—see paper.

Praecipe for
25 June 1964,          /Judgment entered and indexed.
Joseph C. Dolan[11]
Prothonotary."

In the judgment index appears the following entry:[12]

"Writ of Exec      5 March 1965

| Defendant | Plaintiff |
|---|---|
| Newfoundland | Crown |
| American In- | Construction |
| surance Com- | Company |
| pany, Limited | |

| Amount | No. | Term | Year | Mon | Day |
|---|---|---|---|---|---|
| 1649297 | 12 | Sep | 1964 | June | 25 |
| | | | | | 1964" |

On the state of these docket entries it appears obvious that a judgment had been entered. It is difficult to understand how Newfoundland was not aware of the entry of judgment until January 25, 1965 when it learned of the issuance of a writ of execution. There is no allegation the records had been altered or subjected to tampering and we must presume the Prothonotary in the docketing and preservation of these records performed his duties as a public official. Any layman, let alone a lawyer, who examined these docket entries after June 25, 1964 would have been put on warning, at the very least, a judgment had been entered.

What Newfoundland seeks, in this phase of its argument, is a remand of this matter to the court below to permit it to present evidence that its local counsel

---

[11] This entire entry is typewritten with the exception of the signature "Joseph C. Dolan" which is handwritten.

[12] This entire entry is typewritten with the exception of "Writ of Exec" and date thereof which is handwritten.

had inquired at the Prothonotary's office and was advised that a praecipe for judgment and not a judgment had been entered, that the Prothonotary's signature related to the praecipe for and not the entry of judgment and that when Newfoundland's counsel discussed the matter with an unidentified member of the court below "[t]here was confusion on the docket and this confusion was apparent." Official entries in the instant docket should have been examined by counsel; had such been done Newfoundland would have been alerted that the entry as made indicated a judgment had been entered. Despite its allegation that the docket entries caused "confusion", Newfoundland made no effort in the court below to have this "confusion" dispelled. In fact, it was not until the appeal to our Court that this issue was raised; not having been raised in the court below we must follow our salutary rule which precludes the consideration of any issue belatedly raised at the appellate level for the first time.

Newfoundland, by a petition to strike off and a petition to open, have challenged this default judgment. Neither has merit. As to the former petition, the instant record reveals no such infirmity as would justify expunging this judgment from the record. As to the latter petition, we have a classic example of "too little too late". The petition to open this judgment, filed seven months after the entry of the judgment, offers no reason for the delay in seeking to open this judgment and makes no attempt to indicate that it has a meritorious defense to the claim; under such circumstances the court below properly refused to open the judgment.

Order affirmed.

Mr. Justice COHEN dissents.