## Gilmer v. P.T.C.

*James F. Mundy*, for plaintiff.
*F. Ross Crumlish*, for defendant.

FORER, J., August 28, 1974.—This action in trespass for injuries allegedly suffered when plaintiff was alighting from a SEPTA (formerly PTC) bus was tried without a jury on April 16, 1974. The court found for plaintiff in the sum of $28,198.88. Defendant's motion for a new trial or, in the alternative, judgment n.o.v., raises two questions: (1) Was the denial of a jury trial for failure to comply with Pennsylvania Rule of Civil Procedure 1007.1(a) improper or violative of defendant's rights, and (2) was the verdict against the weight of the evidence?

Rule 1007.1(a) provides as follows:

"In any action in which the right to jury trial exists, that right shall be deemed waived unless a party files

and serves a written demand for a jury trial not later than twenty (20) days after service of the last permissible pleading. The demand shall be made by endorsement on a pleading or by a separate writing."

It is undisputed that defendant did not comply with the rule. However, counsel requested a jury trial before the calendar judge who denied it and then renewed his request before this court. Although a trial judge has discretion to grant a jury trial, this matter had already been passed upon by the calendar judge. It was, therefore, the law of the case that the request was not timely and that there were no extenuating circumstances justifying a relaxation of the rule. The issue before this court is thus narrowly limited to the constitutionality of the rule.

The right to trial by jury in civil cases is "preserved" by the Seventh Amendment to the Constitution of the United States. The United States Supreme Court has repeatedly ruled that the seventh amendment is not applicable to the States through the due process clause of the fourteenth amendment: Edwards v. Elliot, 88 U. S. 532 (1874) (dicta); Walker v. Sauvinet, 92 U. S. 90 (1875); Jones v. Aetna, 389 U. S. 990 (1967); Mayes v. McKeithen, 396 U. S. 868 (1969).

In Melancon v. McKeithen, 345 F. Supp. 1025 (D. La., 1972), the district court, in discussing the historical background of the civil jury trial, noted that the Magna Charta did not provide for trial by jury[1]: Id. at 1030. Neither was it considered an essential element of liberty by the framers. Alexander Hamilton wrote: "I must acknowledge, that I cannot readily discern the inseparable connection between the existence of liberty, and the trial by jury in civil cases . . . The excellence of the trial by jury in civil cases, appears

---

[1] See Keeney, Judgment by Peers (1952).

to depend on circumstances foreign to the preservation of liberty: Id. at 1031.[2]

The United States Constitution, being inapplicable, the question of whether defendant was denied its right to a jury trial must be decided in terms of the Pennsylvania Constitution, article I, sec. 6,[3] and the cases thereunder. The Pennsylvania Supreme and Superior Courts have repeatedly upheld the constitutionality of procedural restrictions on the right to jury trial in civil cases in order to foster orderly expeditious court administration: Downs v. Scott, 201 Pa. Superior Ct. 278 (1963); Wright et al. v. Barber, 270 Pa. 186 (1921); Rennekamp Supply Co. v. Valicenti, 178 Pa. Superior Ct. 13 (1955); Cohen v. Sykes, 180 Pa. Superior Ct. 427 (1956).

In the instant case, plaintiff filed her complaint on April 11, 1968. The docket reveals that no answer was filed by defendant. A certificate of readiness was first filed on February 24, 1970. A major case petition was filed on January 24, 1972, and denied on July 25, 1972. The case was then placed on the general trial list. At defendant's request, the certificate of readiness was withdrawn on September 21, 1973, so that plaintiff could be re-examined by defendant's physician. On January 30, 1974, plaintiff refiled a certificate of readiness, and reiterated the petition for major case listing as well. On February 4, 1974, defendant for the first time demanded a jury trial.

It is obvious that defendant did not comply with the rules. Rule 1007.1(a) permits the payment of a jury fee at the time the certificate of readiness is filed. When plaintiff waives jury trial, defendant is given

---

[2] The Federalist, No. 83 (A. Hamilton) (Wright Ed.) pages 522-523.

[3] "Trial by jury shall be as heretofore, and the right thereof remain inviolable."

ten days after notice of filing the certificate *to reiterate* the demand for jury trial and pay the fee. When there has been no previous demand by either party, they are both deemed to have waived the right (see Notice to the Bar, *The Legal Intelligencer*, May 22, 1974, and June 18, 1974). It should be noted further, that this explanation does not comprehend the situation where a certificate of readiness must be refiled for some reason, especially six years after commencent of the action.

Defendant also complains of an ex parte appearance before the court (Cavanaugh, J.) by plaintiff who mistakenly thought that the status of the case had been changed from nonjury. No order appears on the docket. The status of the case had not been changed. Judge Cavanaugh, in his capacity as assignment judge, continued the nonjury status of the case. The late demand for a jury trial could not properly be considered by the trial judge on the day of trial.

There being no question of the per se constitutionality of reasonable State restrictions on the right to civil jury trial, the next consideration is the fundamental fairness of the restriction as applied to this case. It is not contended that Rule 1007.1(a) is unreasonable or imposes an undue burden on litigants. This defendant is neither indigent nor inexperienced in procedural matters. Counsel has not been recently changed; his competence is unquestioned. The considerations noted in Fuentes v. Shevin, 407 U. S. 67 (1972), do not obtain. Although relaxation of Rule 1007.1(a) may be required in some circumstances, the case at bar presents no mitigating or compelling reasons for doing so. Accordingly, defendant's request for a jury trial on the scheduled trial date was denied.

Defendant asserts that the verdict was against the weight of the evidence. The facts as adduced at trial

are substantially uncontroverted. Although there were many passengers on the bus, there were no eyewitnesses produced at trial. The evidence consisted primarily of the testimony of plaintiff and of the bus driver who did not see her fall. Plaintiff was a passenger on defendant's bus. When the bus reached the terminal at Frankford and Pratt Streets, plaintiff arose from her seat to leave. While she was in the process of descending from the bus from the center doors, according to plaintiff, the bus lurched causing her to lose her balance. "As I started to get off the bus, I went out the center . . . there are two steps there. As I started down the steps and put my hand out to open these doors, the bus very suddenly moved, it was very unexpected. I had no recourse, I just flew out the door . . .". Plaintiff fell onto the pavement below sustaining injuries to her left ankle. On cross examination, plaintiff reaffirmed these same facts.

The bus driver testified that he became aware of the accident when someone approached the front of the bus to tell him a woman had fallen.

The bus in question is the type in which a passenger must manually push the center doors open before alighting. When the bus stops, the driver must turn a switch to release the doors so that they will open when pushed, allowing passengers to enter or leave. Once the switch is turned on, an "interlock system" is supposed to prevent the bus from moving by automatically applying the brakes and locking the accelerator. The bus driver testified that he turned on the interlock and that he did not feel any movement or "lurching forward" from the time he stopped the bus in the terminal until he learned of Miss Gilmer's fall. On crossexamination, however, the driver testified that in his own experience "on occasion if you get a faulty interlock system, that is possible; that when the door

is open the bus will move." His experience with this type of bus extended over a ten-year period.

It is well established in Pennsylvania that a common carrier, although not an insurer, owes the highest duty of care to its passengers: Whitely v. P. T. C., 211 Pa. Superior Ct. 288 (1967); Connolly v. P. T. C., 420 Pa. 280 (1966); Archer v. Pittsburgh Railways Co., 349 Pa. 547 (1944).

Moreover, viewed in terms of a burden of proof, "a legal presumption of negligence arises, casting upon the carrier the onus of disproving it, when an injury to a passenger is caused by a defect in the road, cars or any other appliance, or by a want of diligence or care in the carrier or its employees, or by any other thing which the carrier can and ought to control as a part of its duty to carry passengers safely": Bickley v. Phila. & Reading Ry. Co., 257 Pa. 369 (1917) at 375. Such a presumption may be rebutted by the evidence presented at trial; however, the trier of fact should construe the evidence in the light most favorable to the plaintiff, "giving her the benefit of all reasonable inferences flowing therefrom": Moss v. Reading Co., 418 Pa. 598 (1965); Whitley v. P. T. C., supra.

The trial court observed the manner and demeanor of the witnesses and found that both plaintiff and the bus driver were credible. Defendant was unable to overcome the presumption of negligence placed on it by the controlling case law. Defendant contended that the bus *could* not move once the interlock was applied. This court takes judicial notice of the fact that mechanical devices can, and do, malfunction from time to time. Defendant's own driver testified that in his experience a similar bus had moved even though the interlock was applied.

Although the bus driver did testify that the bus did not move, this court, in considering the fact that the

driver was seated and less likely to feel a lurch than one in a standing position and that he was not in a position to observe the passengers alighting and that plaintiff's forthright description of how the accident occurred is credible, found that plaintiff had sustained her burden of proof. See General Electric Credit Corp. v. Aetna Casualty & Surety Corp., 437 Pa. 463 (1970); Brodhead v. Brentwood Ornamental Iron Co., 435 Pa. 7 (1969); Metz v. Travelers Fire Insurance Co., 355 Pa. 342 (1946). The court concluded that plaintiff's fall occurred as a result of some motion of the bus as she was alighting from it.

See Barton v. Pittsburgh Railways Co., 184 Pa. Superior Ct. 304 (1957), in which the facts are almost identical to those in the instant case. The Superior Court there affirmed the judgment of the lower court in refusing to grant a new trial on the grounds that the verdict was contrary to the weight of the evidence: Id. at 307. See also Baugh v. McCallum, 140 Pa. Superior Ct. 276 (1940); Joseph v. Rochester Motor Coach Co., 380 Pa. 189 (1955).

For all the foregoing reasons, the motion for new trial and/or for judgment n.o.v. is denied.