423 A.2d 1026

Mary Catherine WARDEN, Zora Kurtz, Theodore Sokolovich, Jr., Dianna Kaldon and Cora Sokolovich, as Heirs of the Estate of Theodore Samuel Sokolovich, Deceased, original mortgagee

v.

T. Richard ZANELLA and Lois R. Zanella, Husband and Wife, Appellants.

Superior Court of Pennsylvania.

Submitted April 16, 1980.

Filed Oct. 31, 1980.

138

T. Richard Zanella, appellant, in pro. per.

Lois R. Zanella, appellant, in pro. per.

Alfred L. Steff, Jr., Beaver, for appellees.

Before SPAETH, WICKERSHAM and LIPEZ, JJ.

SPAETH, Judge:

This is an action of mortgage foreclosure.

On March 29, 1973, appellants T. Richard and Lois R. Zanella (husband and wife), executed a bond accompanied by a mortgage mortgaging certain real estate to Theodore Samuel Sokolovich. Appellants were to pay $51,900 at a rate of $400.00 per month over a five year period, beginning May 1, 1973, and all taxes and insurance on the property.

At the expiration of this period, on April 1, 1978, the entire balance was due. In case of default, the mortgage called for payment of the unpaid balance, along with interest, damages, costs and attorney's fees.[1] On December 6, 1973, Sokolovich died, devising his interest in the mortgage to appellees as his heirs. On June 1, 1978, appellees brought the present action, alleging that appellants had failed to make timely payment of the March 1, 1978, installment, and had not paid the full balance of principal and interest that became due on April 1, 1978. At the time of the complaint, appellees claimed that this amount totaled $44,932.97.

After a non–jury trial, the lower court rendered a verdict in favor of appellees in the amount of $48,396.18. Appellants discharged their attorney, who petitioned for and was granted permission to withdraw her appearance. Appellants then filed a motion for a new trial, which was denied by the lower court *en banc* by order of July 9, 1979. This appeal is from that order.

1

▮ Appellants make essentially five arguments in their *pro se* brief. Appellant's first argument is that their attorney failed to protect their constitutional rights to a trial by jury. However, we find that appellants effectively waived their right to a trial by jury.

▮ It is settled that the right to a trial by jury may be waived by conduct as well as by express statement. *Downs v. Scott,* 201 Pa.Super. 278, 191 A.2d 908 (1963). In *Cohen v. Sykes,* 180 Pa.Super. 427, 118 A.2d 208 (1955), a plaintiff in an assumpsit action waived the right to a jury, but the defendant asserted it in a counterclaim filed with the court. However, through an error of the prothonotary's office, the case was placed on the non–jury list. The defendant failed to notify the court of the error, and went to trial without objection. In fact, the defendant did not complain about the

---

1. A mortgagee is entitled upon foreclosure to recover reasonable expenses, including attorney's fees. *Foulke v. Hatfield Fair Grounds Bazaar, Inc.,* 196 Pa.Super. 155, 173 A.2d 703 (1961); *Jones v. McDowell,* 41 Pa.Super. 42 (1909); *Scott v. Carl,* 24 Pa.Super. 460 (1904).

lack of a jury until three days after the verdict was rendered. Finding waiver, we said:

It is well settled that the right to a jury trial may be waived, either expressly or by implication, *Wright v. Barber*, 270 Pa. 186, 113 A.2d 200. Although defendant did not expressly waive his right by following the statutory procedure, he clearly waived it by implication by standing by on numerous occasions and accepting a non-jury trial without protest.

180 Pa.Super. at 430, 118 A.2d at 209.

*See also Stathas v. Wade Estate*, 251 Pa.Super. 269, 380 A.2d 482 (1977).

In the present case, the only time appellants requested a jury trial was on August 3, 1978, when they included a demand for a jury in a Motion to Quash service. However, on March 26, 1979, the attorney for appellees filed a Certificate of Readiness, representing that the trial would be non–jury. Appellants took no exception to this representation. Nor did appellants reinstate their demand for a jury in the pre–trial statement filed with the lower court, or when the lower court filed its pre–trial order of June 5, 1979, which called for a non–jury trial. Finally, appellants made no objection to the lack of a jury at the trial.

Appellants attribute their failure to object to a non–jury trial to their attorney, who they allege failed to assert their rights before the court. This argument closely resembles the claims of ineffectiveness of counsel, ordinarily raised in post conviction proceedings. Even in a criminal trial, however, decisions of counsel strategic in nature are binding on the client. *Commonwealth ex rel. Bell v. Rundle*, 420 Pa. 127, 216 A.2d 57, *cert. denied*, 384 U.S. 966, 86 S.Ct. 1599, 16 L.Ed.2d 678 (1966). In *Commonwealth ex rel. Adderley v. Myers*, 418 Pa. 366, 211 A.2d 481 (1965), our Supreme Court said:

Decisions of a trial attorney are binding upon his client if they are strategic in nature: *Henry v. Mississippi*, 379 U.S. 443, 85 S.Ct. 564 [13 L.Ed.2d 408] (1965). As if such decisions knowingly include a plan not to raise constitu-

tional issues, this conduct is conclusive, and is a waiver of the right to raise such questions later.

*Id.*, 418 Pa. at 368, 211 A.2d at 482–83.

This is also true in civil cases. For example, in *Appeal of Konick*, 34 Pa.Cmwlth. 502, 383 A.2d 1002 (1978), the Commonwealth Court held that an attorney's decision that the defendant should not testify did not deprive the defendant of effective assistance of counsel. Here, appellant's attorney's decision to proceed with a non–jury trial appears to have been a strategic decision. As such, it was binding on appellants.

## 2

■ Appellants' second argument is that appellees failed to make proper service of their amended complaint.[2] The amended complaint added the United States of America as a party defendant, as a precaution against the possible attachment of tax liens on the mortgaged property. We find appellants to have waived this issue as well.

■ It is settled that the question of personal jurisdiction must be raised at the first reasonable opportunity, or else it is waived. *Crown Construction Co. v. Newfoundland Am. Ins. Co.*, 429 Pa. 119, 239 A.2d 452 (1968). *Commonwealth v. Schwarz*, 252 Pa.Super. 95, 380 A.2d 1299 (1977); *Cox v. Hott*, 246 Pa.Super. 445, 371 A.2d 921 (1977). *See also* Pa.R.Civ.P. 1017, 1032. In the present case, appellants failed to object to the service of the amended complaint, instead personally appearing at the trial.

## 3

Appellants' third argument [3] is that the lower court denied them their right to a fair trial by its refusal to admit evidence in support of their counterclaims, as follows:

19. By way of further answer and defense, the defendants, T. RICHARD ZANELLA and LOIS R. ZANEL-

---

**2.** Appellees claim that the amended complaint was delivered to appellant's attorney. *See* Pa.R.Civ.P. 1141(b), 1027(1).

**3.** This argument is combined with appellants' fourth and fifth argument, which make essentially the same point.

LA, allege the plaintiff or plaintiffs are indebted to the defendants, for a sum in excess of Ten Thousand ($10,000.00) Dollars, upon the following causes of actions:

20. The Plaintiff or Plaintiffs never removed a horse, (Brown Chestnut commonly called "Beau"), from the property from the time of possession by the defendants, to the present being over five (5) years. The Plaintiff or Plaintiffs failed to keep the barn clean and fence in proper order and caused the defendants further expense and damage.

21. The Plaintiff or Plaintiffs failed to reimburse the defendants for livery costs of the horse "Beau." The value and cost exceeds Twelve Thousand ($12,000.00) Dollars.

22. The Plaintiff, CORA SOKOLOVICH, made a statement to the effect that they would take possession of the property and had a right to the hay in the barn.

23. The Plaintiff, CORA SOKOLOVICH, and her family have continued to dump trash and garbage on the property of the defendants, regularly, for the period of over five (5) years, the cost of clearing the debris exceeds One Thousand Dollars.

Pa.R.Civ.P. 1148 provides that in an action of mortgage foreclosure

A defendant may plead a counterclaim which arises from the same transaction or occurrence or series of transactions or occurrences from which the plaintiff's cause of action arose.

In Goodrich–Amram it is said:

It [Rule 1148] restricts every defendant to claims which arise from the same transaction or occurrence or series of transactions or occurrences from which the plaintiff's cause of action arose .... No defendant may now set off a claim against the plaintiff simply because its nature is contractual or quasicontractual, as allowed in assumpsit actions.

The claim must now arise, in some manner, from the mortgage relationship. A counterclaim could be filed, for example, for damages for breach of warrant of title to the mortgaged premises. [*Cf. Wacker v. Straub*, 88 Pa. 32 (1878).] Also, it has been held that defendant may counterclaim for the balance due from plaintiff on a construction contract in connection with which the mortgage was given. [*Genel v. Vacca*, 39 Del.Co.Rep. 191 (1952)]. On the other hand, a counterclaim could not be filed for professional services rendered by the mortgagor to the mortgagee, at least if unrelated to the mortgage. [*Cf. Bechtel v. Green*, 17 Berks Co.L.J. 41 (1924).]

3 Goodrich–Amram 2d, § 1148:1, p. 488.

In *Mellon Bank N.A. v. Joseph et ux.*, 267 Pa.Super. 307, 406 A.2d 1055 (1979), we affirmed an order striking a counterclaim in an action of mortgage foreclosure because the allegations in counterclaim "were not part of, or incident to, the creation of the mortgage itself." (Slip op. p. 10). *See also Signal Consumer Discount Co. v. Babuscio*, 257 Pa.Super. 101, 390 A.2d 266 (1978); *Penn Title Ins. Co. v. West Main Street Associates, Inc.*, 103 Montg.Co.Rep. 386 (1977). The same may be said of the counterclaims here. Accordingly, the lower court did not err in refusing to admit evidence in support of the counterclaims.

### 4

Appellants' fourth argument is that they were denied a fair trial by the lower court's refusal to admit evidence of oral agreements by the mortgagee and sales agent not to reclaim the property on foreclosure. These agreements were alleged in appellants' new matter and as one of their counterclaims, as follows:

18. The five (5) year limitation was put into the mortgage to protect Theodore S. Sokolovich for the costs involved in the sale of the property, and not the intention to recover the property from the defendants.

. . . . .

24. That Theodore S. Sokolovich and the attorney–in–fact, Dianna Kaldon knew that there may be a longer period of time than five (5) years needed for the defendants to obtain a mortgage on the property.

. . . . .

26. In reliance on the written agreement of September 22, 1972, and the oral agreements made subsequently between THEODORE S. SOKOLOVICH, with the presence of Dianna Kaldon, acting in interest of Theodore S. Sokolovich, as next of kin and heir to his estate, and Ben DeVries, of the selling agency, the defendants consummated the transaction in good faith and moved their residence to the said property and abided by the agreements to the best of their ability, as not to deceive or misrepresent any matters to Theodore S. Sokolovich or his Heirs.

■ The lower court did not err in refusing to admit evidence of these agreements. The Statute of Frauds, Act of March 21, 1772, 1 Sm.L. 389, § 1, 33 P.S. § 1 et seq., provides that "no leases, estates or interests, either of freehold or terms of years, or any uncertain interest, of, in to or out of any messuages, manors, lands, tenements or hereditaments shall, at any time after the said April 10, 1772, be assigned, granted or surrendered, unless it be by deed or note, in writing, signed by the party so assigning, granting or surrendering the same, or their agents, thereto lawfully authorized by writing, or by act and operation of law. In *Eastgate Enterprises, Inc. v. Bank & Trust Company of Old York Road*, 236 Pa.Super. 503, 345 A.2d 279 (1975), we said:

To be valid, a mortgage must be in writing. "There can be no such thing as a valid and efficacious, parol mortgage." *Bower v. Oyster*, 3 P & W 239, 240 (Pa.1831). *Accord, Kepler v. Kepler*, 330 Pa. 441, 199 A. 198 (1938); *Thomas's Appeal*, 30 Pa. 378 (1858); *Shitz v. Diffenbach*, 3 Pa. 233 (1846). Early cases held that certain parol agreements relating to mortgages were permissible. *Craft v. Webster*, 4 Rawle 241 (Pa.1833) (oral assignment of mort-

gage is not invalidated by the Statute of Frauds); *Ackla v. Ackla*, 6 Pa. 228 (1847) (a parol release may extinguish a mortgage). The reasoning was that a "mortgage, in Pennsylvania is literally and legally now understood to be but a bare security for the payment of the money, or performance of other acts therein mentioned; and at most only a chose in action." *Craft v. Webster, supra* at 255. Subsequent decisions, however, have not accepted this reasoning. A mortgage is no longer considered to be "at most . . . a chose in action." Rather, mortgages "are in form defeasible sales, and in substance grants of specific security, or *interests in land for the purpose of security.*" *Bulger v. Wilderman and Pleet*, 101 Pa.Super. 168, 174 (1931) (emphasis supplied).

> "While ordinarily, as to third parties, a mortgage may be only a security for the debt specified in the accompanying bond, it is, *as to the mortgagor and mortgagee,* and those claiming under and through them, *a conveyance of the land,* and may be enforced as such whenever the mortgagee deems it necessary so to do in order to enable him to speedily and effectively recover the amount then due on the bond." *Randal v. Jersey Mortgage Inv. Co.*, 306 Pa. 1, 5, 158 A. 865, 868 (1932) (emphasis supplied).

Therefore, as between the mortgagor or mortgagee and the rest of the world, the mortgage may represent only a chose in action, but as between the mortgagor and mortgagee, the mortgage represents an interest in land and so must satisfy the Statute of Frauds. 9 Thompson on Real Property § 4659 (1958 replacement).

*Id.*, 236 Pa.Super. at 507–08, 345 A.2d at 281 (footnote omitted).

We went on to hold that an oral agreement not to foreclose, which the plaintiff–mortgagor alleged had been made by the defendant–mortgagee, was unenforceable, under the Statute of Frauds:

> In the present case, the alleged oral agreement not to foreclose was between the mortgagor and mortgagee. As between these parties, the mortgage represented an inter-

est in land. The agreement not to foreclose was therefore an agreement to surrender an interest in land. As such, the agreement was within the Statute of Frauds. In *Second National Bank of Uniontown v. Hustead,* 334 Pa. 421, 6 A.2d 63 (1939), the Supreme Court held that "an oral agreement . . ., in consideration of . . . forbearance to appeal from the decision of the court dismissing exceptions to the sheriff's sale" was "within the prohibition of the statute of frauds." *Id.,* 334 Pa. at 422, 6 A.2d at 63–64. There is no distinction of substance between an agreement not to appeal from a sheriff's sale, and not to foreclose a mortgage.

*Id.,* 236 Pa.Super. at 508, 345 A.2d at 281.

 It may also be noted that evidence of the oral agreements was inadmissible under parol evidence rule, *see Sokoloff v. Strick,* 404 Pa. 343, 172 A.2d 302 (1961), and that appellants were incompetent to testify regarding the agreements because of the Dead Man's Act, 42 Pa.C.S. § 5930, *see Patterson v. Hughes,* 236 Pa. 315, 84 A.2d 829 (1912) (where at time of trial mortgagee was dead, held, mortgagor incompetent to testify that she was induced to sign mortgage by representations made by decedent's attorney on decedent's behalf).

## 5

Finally, appellants argue that the lower court's verdict in the amount of $48,396.18 was incorrect and contrary to the mortgage agreement. The lower court said that in their motion for new trial, appellants "did not question the amount due as computed by [appellees]," and therefore, "assume[d] that the amount of the debt is not now being contested." Slip op. at 5. However, appellants did argue in their motion for a new trial that the verdict was incorrect, and have repeated this claim verbatim on appeal. We understand appellants to be challenging the correctness of the lower court's calculations in arriving at the amount of the verdict.

 On this issue, we are unable to find support in the record for the amount of the verdict as set forth by the

lower court. Both sides have agreed that the principal due on the mortgage at the time of the default was $42,285.87. The disagreement centers around the sum total of the principal and interest (6% annually, according to the mortgage) and attorney's fees (5% of principal *and* interest, according to the calculations of both sides). Appellees claim that this total is $48,396.18, the amount awarded by the lower court. Appellants, on the other hand, claim that the amount should be $47,596.98. Our own calculation is between the two:

| | | |
|---|---|---|
| Principal | | $ 42,285.87 |
| Interest | | |
| (6% from 4/1/78 − 6/30/79) | | 3,171.44 |
| | Subtotal | $ 45,457.31 |
| Attorney's fees | | 2,272.86 |
| | TOTAL | $ 47,730.17 |

We shall therefore remand the case to the lower court so that it either may reconsider its calculations or explain how it reached the amount that it did. After the lower court reaches a decision, either party may bring a new appeal limited to the issue of the amount of the verdict. In all other respects, the order of the lower court is affirmed.

So ordered.