449 A.2d 729

**Michael SOTAK and Karen Sotak, his wife**

v.

**Richard H. NITSCHKE and Ursula Nitschke, Appellants.**

Superior Court of Pennsylvania.

Argued Feb. 9, 1982.

Filed Aug. 20, 1982.

George B. Stegenga, Washington, for appellants.

Bernard S. Shire, Monessen, for appellees.

Before BROSKY, CIRILLO and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from the final decree entered by the court in equity which directed appellants-defendants, Richard and Ursula Nitschke, to perform specifically the agreement of sale they negotiated with appellees-plaintiffs, Michael and Karen Sotak. We affirm in part and remand for the reasons herein stated.

In this appeal, appellants raise the following issues: (1) whether the trial court failed to comply with Pa.R.C.P. 1517 because the decree nisi failed to include a statement of the issues, a chronological statement of the facts, and a discussion of the legal issues presented; (2) whether appellees failed to prove fraud; (3) whether specific performance should have been granted because the suit was filed untimely and because the trial court failed to conclude that appellants should be reimbursed for $23,000 worth of improvements they made on the property in question; and (4)

whether appellees should be charged with knowledge of the second survey.

The "DECREE NISI" which appellants complain is defective contained the following information:

## "DECREE NISI

March 23, 1981

After reviewing this matter extensively, we have decided to accept the Plaintiff's proposed findings of fact with the exception of No. 28 finding. We would also delete the word "obvious" from finding No. 2.

We accept the Plaintiff's proposed conclusion of law. It seems to me that since there must be oral arguments on this case before the court en banc, if exceptions are taken, that a full dress opinion can await that stage; otherwise we double the paper work.

The Defendants are granted 20 days from service hereof to take exceptions. In the interest of bringing the arguments to a head—it was all quite diffuse in the chancellor's room—we urge that the Defendant not file the routine boilerplate objection to each finding of fact and conclusion of law but address exceptions to those on which a centrality of disagreement can be conferred. We find that the Plaintiffs were defrauded and deceived here—that is the heart of the matter.

In the event no exceptions are filed, we will issue a final decree in 20 days. We intend specifically therein to require performance of the agreement of sale dated November 14, 1975 as the same is written and intend to order that the deed be reformed and rectified by making it's [sic] description consistent with the agreement of sale. Ancillary relief, as requested in the other lettered paragraphs of the Plaintiff's demand, will be applied to effectuate this central decision.

/s/    Charles G. Sweet P. J."

When examining the chancellor's decree, we must remember the following guidelines:

364

"Pennsylvania Rules of Civil Procedure 1516 to 1519, 12 P.S. Appendix clearly enunciate the steps which must be followed by the chancellor, and by the litigants, before a procedurally proper appeal may be taken to this Court. Rule 1516 recites that the parties may file requests for findings of fact and conclusions of law. Rule 1517 itemizes the contents of the chancellor's 'adjudication.' This adjudication must contain, in addition to a decree nisi, a summary of the issues raised in the pleadings, specified findings of fact and conclusions of law, and a discussion of the factual and legal questions involved in the case. Rule 1518 allows the parties 20 days to file specific exceptions to this adjudication. Finally, Rule 1519 provides that the court en banc shall pass on these exceptions, or, if none are filed, the prothonotary, upon praecipe, shall enter the decree as final. All of these steps are necessary to establish an adequate record on appeal.[4] *See also In re Involuntary Termination of Parental Rights*, 487 Pa. 387, 409 A.2d 404 (1979).[5]

[4] Pa.R.C.P. 1518 presently requires that exceptions be filed in ten days rather than twenty days.

[5] The effect of non-compliance with the Rules of Civil Procedure is succinctly stated in Goodrich-Amram, 2d, Vol. 5, page 170, 171, as follows:

Unless the provisions of Rules 1517–1519 are followed, an appeal in an equity case is premature and will be quashed. Review by the court en banc is obligatory. Where no adjudication is filed, and there are no exceptions of final decree, an appeal is premature and will be quashed."

*Houston-Starr Co. v. Virginia Mansions Apartments, Inc.*, 295 Pa.Super. 480, 483–484, 441 A.2d 1334, 1336 (1982).

Appellants contend that the decree is defective because of the absence of a statement of the issues, chronological statement of the facts, and conclusions of law. We cannot agree.

In the discussion portion of their brief, appellants also state that "the action should be dismissed as the Court does not have jurisdiction in this matter, for the reason that indispensable parties, to-wit, the several purchasers of the land in question, were not joined in this proceeding." Brief

for Appellants at 16. The state of the record, however, precludes an examination of this contention.

To begin with, the chancellor adopted appellees' proposed findings of fact, with two exceptions, and their conclusions of law. Those findings and conclusions, which are of record, are as follows:

## "PLAINTIFF'S PROPOSED FINDINGS OF FACT

1. The parties entered into a Sales Agreement prepared by Kent Putnam, Esquire, dated November 14, 1975 which contained the following details: (Exhibit 1)

(a) Richard H. Nitschke and Ursula Nitschke, his wife, were Sellers.

(b) Michael Sotak and Karen Sue Sotak, his wife, were Buyers.

(c) The closing date was set for March 14, 1976.

(d) The sales price was Forty-five Thousand and 00/100ths ($45,000.00) Dollars; Two Thousand and 00/100ths ($2,000.00) Dollars for personal property and Forty Three Thousand and 00/100ths ($43,000.00) Dollars for the real property.

(e) The Buyers, their heirs and assigns, were to have the use in common with the Sellers, their heirs and assigns, of a spring located on the part of Sellers' land and all the right, liberty and privilege thereto with the right of ingress and egress across Sellers' land to said spring.

(f) The property which was the subject of the Agreement was described as:

'All that certain tract of land situate in the Borough of Centerville, Washington County, Pennsylvania, being that part of a tract of land comprising 86 acres, more or less, conveyed to the Sellers herein by deed of Adolph Bergstein, et ux., dated March 18, 1961 and recorded in the Washington County Recorders' Office in Deed Book Volume 1098, page 14, lying to the East of Hancock Road, bounded on the North by lands now or formerly of Charles Patterson, et ux., Westley M. Fowler, et ux., and others,

on the East by the Nitschke farm line, on the South by lands now or formerly of Joseph Kovach and on the West by Hancock Road, containing 36 acres, more or less.'

(g) A more detailed description was to be provided upon completion of a survey.

2. In the description contained in Paragraph 8 of the Sales Agreement, (Plaintiff's Finding of Fact 1(g)), there was an [*obvious*] drafting error in the description of the parcel as being East of Hancock Road and also bounded on the West by Hancock Road, which error was overlooked by both parties.[1] (T. 42)

3. Both parties intended to agree that the property being sold was located West of Hancock Road and was bounded on the East by Hancock Road. (T. 42)

4. Pursuant to the Sales Agreement, Richard Nitschke instructed Michael J. Kanalis, a Registered Surveyor to prepare a survey of the property to be conveyed. (T. 160)

5. Michael J. Kanalis prepared and delivered two prints of a survey dated December 27, 1975 to Plaintiff, Michael Sotak, who paid him for the survey. (T. 15)

6. The December 27, 1975 survey accurately represented the property to be conveyed under the terms of the Sales Agreement with the exception that a house parcel was not included in the survey. (T. 15, 17, 18, 19, 20 & 106)

7. The Plaintiffs approved the survey and Karen Sue Sotak delivered it to Richard Nitschke on January 5, 1976. Richard Nitschke also approved it and agreed that the survey represented the ground to be conveyed. (T. 126, 191)

8. Richard Nitschke, upon approving the said survey, offered to deliver it to Kent Putnam, Esquire for the preparation of legal documents. (T. 126)

9. After Richard Nitschke approved the survey, Karen Sue Sotak took it to First Federal Savings and Loan Association of Monessen, ('First Federal'), for use in connection with Plaintiffs' mortgage application. (T. 127)

1. The chancellor deleted the word 'obvious' from its decree.

10. Between January 5, 1976 and January 24, 1976, Richard Nitschke directed Michael J. Kanalis to prepare a second survey of his property located on Hancock Road. (T. 160, 172)

11. Michael J. Kanalis prepared a second survey, dated January 24, 1976, and delivered it to Richard Nitschke, who paid for it. (T. 163)

12. The January 24, 1976 survey was materially different from the description in Paragraph 8 of the Sales Agreement and from the survey of December 27, 1975 in that the later survey deleted 746 feet of frontage on Hancock Road which contained the orchard of approximately 4.5 acres, which was replaced by a parcel of property fronting 99 feet on Horton Road so that the acreage contained in the two surveys was the same. (T. 56, 57, 170)

13. Richard Nitschke delivered the January 24, 1976 survey to Kent Putnam, Esquire. (T. 203)

14. Kent Putnam, Esquire prepared a deed and mortgage for the property to be sold which contained a description of the property that conformed with the January 24, 1976 survey.

15. On March 23, 1976, the property sale transaction was closed at the office of First Federal when the Sellers delivered an executed deed to the Plaintiffs and Plaintiffs executed a mortgage in favor of First Federal. (T. 102)

16. Both the deed and the mortgage contained descriptions of the property conveyed which conformed with the survey of January 24, 1976. (Exhibits 12, 19)

17. At the time of the closing, the closing officer for First Federal had no knowledge that the January 24, 1976 survey had been prepared or existed, but rather granted the mortgage under the mistaken belief that the mortgaged premises were identical to the property described in the survey of December 27, 1975 along with the house described in a previous deed to the Sellers as per survey dated August 26, 1972. (T. 106)

18. At the time of the closing, the Plaintiffs were not aware that the January 24, 1976 survey had been prepared, rather they believed that the deed and mortgage descriptions described the property shown in the survey of December 27, 1975 and the farm house description. (T. 46)

19. The deed delivered by the Sellers to the Buyers made no reference to the right of the Buyers to have the use of the spring located on the land of the Sellers along with the right of ingress and egress across the Sellers' land to said spring. (Exhibit 12)

20. From the date of the Sales Agreement, Plaintiffs never agreed to change the boundaries contemplated in the Sales Agreement and described in the survey of December 27, 1975. (T. 43)

21. The Plaintiffs were never notified by First Federal, Sellers, or Kent Putnam, Esquire that the property described in the deed did not conform to the property described in the survey of December 27, 1975. (T. 45)

22. Plaintiffs executed the mortgage to First Federal in reliance upon the belief that the description in the mortgage was identical to the property contemplated to be sold pursuant to the Sales Agreement of November 14, 1975 and described in the survey of December 27, 1975, the statement of Richard Nitschke that he would deliver the December 27, 1975 survey to Kent Putnam, Esquire, Plaintiffs' attorney, for the preparation of the deed and mortgage and that their attorney had prepared the deed and mortgage in accordance with the December 27, 1975 survey. Plaintiffs also executed the mortgage to First Federal in reliance on the fact that neither the Sellers, their attorney, or First Federal informed that there was a change in the survey of December 27, 1975. (T. 38)

23. All consideration under the Sales Agreement was paid by the Buyers to the Sellers. (T. 81, 102, 103)

24. The real estate conveyed by the Defendants to the Plaintiffs was of substantially less value and utility than the property agreed to be sold pursuant to the November 14, 1975 Sales Agreement. (T. 57, 58)

25. Plaintiffs did not discover the substitution of real property in the conveyance to them until the summer of 1977. (T. 63)

26. Plaintiffs first saw the January 24, 1976 survey in the fall of 1977 when Kent Putnam, Esquire handed it to Michael Sotak. (T. 71)

27. After the conveyance to the Plaintiffs, Defendants created a sub-division known as the Hancock Road Plan of Lots upon the orchard parcel which had been deleted from the conveyance and subsequently conveyed the property to various grantees of the Defendants. (T. 62, Exhibit 13)

28. The Plaintiffs are obligated to pay $4,000.00 in attorneys fees and $400.00 in appraisal fees in connection with the instant law suit. (T. 61)"[2]

The conclusions framed by appellees and adopted by the court below were set forth according to the following:

## "PROPOSED CONCLUSIONS OF LAW

1. This Court has jurisdiction of both the parties and the subject matter of the instant lawsuit.

2. That on November 11, 1975 the parties entered into a valid and binding contract for the sale of real estate.

3. The Defendant Sellers breached the contract and acted with the intention of defrauding the Plaintiff Buyers in the instant transaction by conveying to them property which was substantially different from the property which Defendants had agreed to convey in the sales agreement. Specifically, Defendants committed a fraud on Plaintiffs in the following manner:

(a) In having prepared a second survey without the knowledge or consent of Plaintiffs which altered the description of the first survey.

(b) In not informing Plaintiffs or the lending institution financing the sale that a second survey had been prepared.

(c) In instructing the law firm which represented Plaintiffs and Defendants to prepare a deed and mortgage with

2. The chancellor also did not adopt Finding # 28.

description of land based upon the boundaries depicted in the January 24, 1976 survey.

(d) The property included in the January 24, 1976 survey, although of equal size, was substantially less valuable and of less utility.

(e) Defendants knew that Plaintiffs were acting under a mistaken belief when Plaintiffs executed the mortgage, accepted the deed and paid the consideration to the Defendants.

(f) In not granting to Plaintiffs the use and access rights to the spring, located on Defendants land, but conversely excepting and reserving the right to use and have access to spring located on the land conveyed to Plaintiffs.

4. The Plaintiffs relied on the representations of the Defendants that the survey of December 27, 1975 represented the property which was to be conveyed to Plaintiffs, and had no knowledge of the January 24, 1976 survey.

5. Plaintiffs acted with clean hands and are entitled to the relief sought.

6. Plaintiffs do not have an adequate remedy at law.

7. Because of the uniqueness of the real estate which is the subject matter of this lawsuit, Plaintiffs are entitled to specific performances of the November 14, 1975 contract.

8. The court will retain jurisdiction of this case in order to see that Plaintiffs acquire possession and good and marketable title to the premises."

More specifically, appellants argue that the court's findings and conclusions fall short of complying with Rule 1517 because the " 'Decree Nisi' was nothing more than an affirmance of plaintiff's proposed findings of fact and conclusions of law." Brief for Appellant at 11. Nothing in the rules, however, precludes a court from adopting those findings and conclusions proposed by a party. In fact, the contrary is implied. Rule 1516 states in pertinent part that "[n]o requests for findings of fact and conclusions of law

may be submitted *except by leave of court.* These requests *may* be treated by the court as suggestions." (Emphasis added.) From this language, it is clear that the court also may adopt such suggested findings and conclusions. *See Anderson v. Guerrein Sky-way Amusement Co.,* 346 Pa. 80, 85, 29 A.2d 682, 685 (1943) ("The court did not make findings of fact or conclusions of law of its own, but merely affirmed or refused the requests for findings and conclusions presented by the parties. As these requests adequately covered all the factual and legal issues involved this practice substantially complied with the requirements of Equity Rule 67.").

Although a commentator has suggested that "[i]t is better practice, however, for the court to set forth its findings [of fact] identical with the requests of one of the parties," the court's mere affirmance of the findings submitted by counsel is not a basis for reversal. Goodrich Amram, 2d § 1517:3 at 174. In any event, appellants are not deprived of an adequate record for appeal on this issue. *See Balin v. Pleasure Time, Inc.,* 243 Pa.Super. 61, 68, 364 A.2d 449, 453 (1976).

Interestingly enough, appellants argue that the court's decree failed to contain a statement of the issues. This argument, however, does not afford appellants a basis for reversal. With respect to this aspect of the case, the court stated:

> "In the interest of bringing the arguments to a head—it was all quite diffuse in the chancellor's room—we urge that the Defendant not file the routine boilerplate objections to each finding of fact and conclusions of law but address exceptions to those on which a centrality of disagreement can be conferred. We find that the Plaintiffs were defrauded and deceived here—that is the heart of the matter." Trial Court's "Decree Nisi" at 2.

Under these circumstances, we conclude that the decree was not defective. *See also Rosenfeld v. Rosenfeld,* 390 Pa. 39, 51, 133 A.2d 829, 835 (1957) ("We do not see, however, what could be gained by our remanding the case.")

Although the issue of whether other parties should have been joined in the present action was not raised in the exceptions filed by appellants, we will address the issue since it is a jurisdictional one. *See Patwardhan v. Brabant,* 294 Pa.Super. 129, 131–132, 439 A.2d 784, 785 (1982). Appellants contend that other purchasers of the land in dispute should have been joined. We are unable to resolve the merits of the instant argument because the record is incomplete.

In the final decree of the court en banc, the court stated the following:

### "FINAL DECREE

AND NOW, this *3rd* day of June, 1981, it is ordered, adjudged and decreed that the defendants, Richard H. Nitschke and Ursula Nitschke, specifically perform the agreement of sale dated November 14, 1975; that the defendants reform and rectify their deed to the plaintiffs dated March 5, 1976, by cancelling the same as it now stands upon record, and executing, delivering and recording in lieu and place thereof a similar deed to the plaintiffs, Michael Sotak and Karen Sotak, his wife, in accordance with the description set forth in paragraphs 6 and 8 of the plaintiffs' complaint in equity, together with the grant of a right-of-way to the plaintiffs to have the use in common with the defendants, their heirs and assigns of a spring located on the other parts of the land of the defendants, their heirs and assigns, with the right of ingress and egress to the aforesaid spring. *This court will retain jurisdiction of this matter, pending determination of the rights of third parties, not parties in this proceeding.* Costs on the defendants, Richard H. Nitschke and Ursula Nitschke." Record at 27. (Emphasis added).

The only other evidence of record which sheds some light on the subject is the following statement included in the court en banc's opinion:

"[t]he court's decree, of course, is without prejudice to the rights of persons not parties to this proceeding, and the court retains jurisdiction pending the disposition of companion litigation." "PER CURIAM OPINION" at 3.

Additionally, appellants fail to elaborate on their claim other than to state that "several purchasers of the land in question, were not joined in this proceeding." Brief for Appellants at 16.

With these facts in mind, we must apply the following legal standards:

> " 'By definition an indispensable party is one whose presence is essential for the granting of relief.' Goodrich Amram 2nd § 1032.6. '[A] party is indispensable where his rights are so connected with the claims of the litigants that no decree can be made between them without impairing such rights.' [1] *Powell v. Shepard,* 381 Pa. 405, 412, 113 A.2d 261, 265 (1955).
>
> [1] Indeed the effect on one's rights may be of constitutional dimension. 'An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated under all circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' *Mulane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873 (1950)."

*Patwardhan v. Brabant,* 294 Pa.Super. at 132, 439 A.2d at 785.

Because the only allegations concerning the companion litigation appear in the parties' briefs and the trial court's opinion, we are unable to resolve the issue on this incomplete record. *Commonwealth v. Rini,* 285 Pa.Super. 475, 483, 427 A.2d 1385, 1390 (1981). For this reason, the matter is remanded to the trial court to consider the issue and to develop the record at which time the court shall not dismiss the action with prejudice but shall proceed either to consolidate the actions or to allow appellees to take the necessary steps to join the other parties if the court determines that the parties are indispensable. *See Patwardhan v. Brabant,* 294 Pa.Super. at 131, 439 A.2d at 785. Henceforth, any future appeal shall be from the final order of court thus imposed.

With respect to the other issues, the trial court adequately addressed them in the opinions ("DECREE NISI" and "PER CURIAM OPINION") which form the basis of the instant appeal. As a result, we need not elaborate.

The order of the court below is affirmed in part and the matter is remanded for proceedings consistent with this opinion.[3]

Jurisdiction is relinquished.

**3.** It may well be that the relief granted by the trial court, specific performance, is the appropriate remedy since "specific performance is an equitable remedy to compel the performance of a contract in the precise terms agreed on, or substantially." 34 P.L.E. § 1, Specific Performance, at 2. However, because the state of the record precludes our examination of the indispensable party issue and also because "[b]y definition an indispensable party is one whose presence is *essential* for the granting of relief", the court on remand should formulate the appropriate decree after it determines whether certain third parties were indispensable. *See Patwardhan v. Brabant,* 294 Pa.Super. 131, 439 A.2d at 785. (Emphasis added).