**EIGHTH NORTH–VAL, INC., Appellee,**

v.

**WILLIAM L. PARKINSON, D.D.S., P.C., PENSION TRUST and William L. Parkinson, Individually, and as Trustee of the William L. Parkinson, D.D.S., P.C., Pension Trust, Appellants.**

Superior Court of Pennsylvania.

Argued Oct. 24, 2000.

Filed April 3, 2001.

Reargument Denied May 30, 2001.

E. Parry Warner, Philadelphia, for appellants.

Paul G. Nofer, Philadelphia, for appellee.

Before DEL SOLE, JOHNSON and BECK, JJ.

DEL SOLE, J.:

¶ 1 Eighth North–Val, Inc. (Bank) brought this action to collect under two promissory notes executed by William L. Parkinson, both in his capacity as trustee of the William L. Parkinson, D.D.S., P.C. Pension Trust and in his individual capacity as guarantor of the notes. After a lengthy nonjury trial, the court found in favor of Bank. Post-trial motions were denied[1] and judgment was entered. This appeal followed. We affirm.

¶ 2 The facts of the transactions are lengthy and complex. However, a summary of the facts as found by the trial court follows. In the spring of 1986, Parkinson, E. Wayne Pocius and Russell Dimmick formed Evergreen Valley Nursery Limited Partnership, a tax-sheltered entity. Weatherly Private Capital, Inc. was employed to create and market this tax shelter. On May 27, 1986, Parkinson, Pocius and Weatherly entered into an agreement under which the Pension Trust, using cash and promissory notes, would buy nursery stock from Van Pines[2] and then immediately sell the stock to Evergreen for cash and investor notes. On July 28, 1986, the Pension Trust entered into an agreement with Van Pines to purchase its Raven Valley Farm nursery stock. Under this agreement, the Pension Trust was required to buy 44% of Raven Valley Farm's stock with an option to buy up to 100%. The Pension Trust would pay for this stock with both cash and promissory notes and the notes were to be personally guaranteed by Parkinson. The agreement called for two closings: the first on October 31, 1986, for the required 44% of the stock and the second on December 31, 1986, for any part of the optioned remainder. For tax reasons, all transactions were to occur in 1986. On September 16, 1986, the Pension Trust and Evergreen entered into an agreement for the immediate resale of the Van Pines nursery stock. Evergreen was to buy the minimum 44% with an option to buy the remainder by December 31, 1986. Again, two closings were called for as in the Pension Trust/Van Pines agreement. The first closing was actually held on November 3, 1986. The Pension Trust pur-

---

1. The trial court did delete a 5% late charge but in all other respects it denied the post-trial motions.

2. Van Pines was a general partnership. Pocius and Dimmick were the only general partners.

chased 44% of the Van Pines nursery stock for cash and a promissory note dated November 3, 1986. Contrary to the agreement, however, this note was not personally guaranteed by Parkinson. The Pension Trust then immediately sold the stock to Evergreen for cash and investor notes. Two days before the second closing, Pocius advised Parkinson that he would have to sign notes with different terms from the November 3 note and that these changes would modify the November 3 note as well as the note which would be executed for the December 31 closing. The changes included: a requirement that Parkinson personally guarantee the promissory notes issued by the Pension Trust; the removal of a condition that the Pension Trust's payments under the notes was limited to funds received by the Pension Trust from Evergreen; and payment under the modified notes was not limited to 33.75% of the principal collected on the investor notes. The July 28, 1986, Pension Trust/Van Pines agreement was also modified. These changes were made at the insistence of Weatherly's tax attorneys who would not issue their tax opinion unless the changes were made. Parkinson agreed to these changes and executed the notes both individually and on behalf of the Pension Trust. Because of changes in the tax law which were part of the Tax Reform Act of 1986, the desired tax advantages and subsequent profit were adversely affected and financial problems affected all the parties. Ultimately, the promissory notes from the Pension Trust to Van Pines were assigned to First Valley Bank, now Summit Bank. The Bank created a wholly-owned subsidiary, Eighth North–Val, to collect the notes and hold other properties formerly owned by Pocius and Dimmick and their various business entities. Bank filed this action against the William L. Parkinson, D.D.S., P.C. Pension Trust (the Pension Trust) and William L. Parkinson (Parkin-

son), both as an individual and as trustee of the Pension Trust.

¶ 3 Appellants first claim the trial court followed incorrect standards in deciding their motion for post-trial relief. When considering post-trial motions following a nonjury trial, the trial court can order a new trial if it concludes that a factual or legal mistake was made at the trial level and that, on consideration of the particular circumstances of the case, the mistake (or mistakes) formed a sufficient basis to order a new trial. *Morrison v. Dep't of Pub. Welfare*, 538 Pa. 122, 646 A.2d 565 (1994). Appellants claim that the trial judge set forth the standard of review which an appellate court follows which is more restrictive. Assuming *arguendo* Appellants are correct, we find any error harmless. It is clear in reading the trial court's Statement of Reasons for its denial of post-trial motions along with its Revised and Corrected Second Supplement to the June 29, 1999 Decision of the Court that the trial court extensively reviewed the record, reconsidered its credibility determinations, and explained its conclusions of law. There is no indication that the court felt itself bound by a too-restrictive standard such that it would not have granted a new trial had it found reason to do so. Our reading of the trial court's various memoranda convinces us that remand on this basis would serve no purpose.

¶ 4 Appellants next contend that the trial court erred by relying excessively on the Bank's proposed findings and adopting many of its findings of fact from the Bank's proposed findings. Appellants cite no case law to support this proposition as indeed there is none. Rather, the cases hold that it is **not** error for the trial court to adopt a party's proposed findings of fact and/or conclusions of law. In *Sotak v. Nitschke*, 303 Pa.Super. 361, 449 A.2d 729

**1252**

(1982), the court adopted all but one of the plaintiff's proposed findings of fact and conclusions of law. On appeal, we held that the court may adopt a party's proposed findings and conclusions as it deems warranted or it may state its findings and conclusions in its own language. Similarly in *Commonwealth ex rel. Bloomsburg State College v. Porter*, 148 Pa.Cmwlth. 188, 610 A.2d 516 (1992), the court adopted the plaintiff's findings of fact and conclusions of law. The Commonwealth Court held that this was not reversible error, citing the statement in *Sotak* that "Nothing in the rules, however, precludes a court from adopting those findings and conclusions proposed by a party. In fact, the contrary is implied." *Bloomsburg State College*, 610 A.2d at 518 (citing *Sotak v. Nitschke*, 303 Pa.Super. 361, 449 A.2d 729, 733 (1982)). There is no merit to this claim.

■ ¶ 5 Appellants' next complaint is that the trial court erred in excluding evidence that Pocius, one of the assignors of the notes, made misrepresentations to the First Valley Bank in the course of negotiations over repayment of a number of other loans which Pocius had obtained from First Valley. Rule 608(b) of the Pennsylvania Rules of Evidence codifies what has long been the law regarding the use of specific instances of misconduct to attack a witness's character for truthfulness: specific instances of misconduct are not admissible. Pa.R.E. 608(b); *see Commonwealth v. Cragle*, 281 Pa.Super. 434, 422 A.2d 547 (1980) and cases cited therein. Although Appellants argue that Rule 608(b) should not apply in this particular instance, they cite no law in support of their argument. Clearly, the purpose of the proffered evidence was to attack Pocius' character for truthfulness. Its inadmissibility is therefore governed by Pa. R.E. 608(b). The trial court did not err in excluding it.

¶ 6 Appellants also find error in the trial court's refusal to accept their defense of misrepresentation. This defense is factually based on the fair market value of the nursery stock. The fair market value in 1986 was based on an RGIS appraisal of trees sold which set forth a value of $10,419,857.97. Appellants contend that this figure was a material misrepresentation. In support of this claim, Appellants introduced evidence that, in 1993, Evergreen entered into a settlement during IRS litigation in which they stipulated that the fair market value of the trees in 1986 was $7,150,000.

■ ¶ 7 Appellants' primary contention in this regard is one of collateral estoppel.[3] Collateral estoppel applies when: (1) the issue decided in the prior case is identical to the one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceedings; and (5) the determination in the prior proceeding was essential to the judgment. *City of Pittsburgh v. Zoning Board of Adjustment*, 522 Pa. 44, 559 A.2d 896 (1989). Collateral estoppel will bar only those issues that actually were litigated in the prior proceeding. *Matternas v. Stehman*, 434 Pa.Super. 255, 642 A.2d 1120 (1994). In a situation involving a consent judgment, there has been no actual litigation of issues

---

**3.** Appellants also vigorously argue that their version of the evidence sufficiently proves this defense. However, the trial court made clear credibility determinations in this regard which we are not at liberty to disregard.

and collateral estoppel does not attach. *Id.*

■ ¶ 8 There is ample evidence to support the trial court's finding that the value stipulated in the IRS proceeding was a settlement to resolve the dispute because Evergreen could not continue to fund the costs of litigation. Pocius testified that, although the attorneys felt they could win at trial, there wasn't enough cash flow to obtain expert witnesses and fund the other expenses of trial. N.T., 10/1/98, at 40–41. Parkinson admitted, on cross-examination, that he believed the IRS stipulation was a compromise to settle the dispute. N.T., 8/26/98, at 186. There was, therefore, no actual litigation of this issue and Appellants cannot rely on collateral estoppel to prove the market value and establish the defense of misrepresentation.[4]

■ ¶ 9 Appellants further claim that there was no consideration for the modifications to the November 3 note. Consideration confers a benefit upon the promisor or causes a detriment to the promisee. *Stelmack v. Glen Alden Coal Co.*, 339 Pa. 410, 14 A.2d 127 (1940); *Dahar v. Grzandziel*, 410 Pa.Super. 85, 599 A.2d 217 (1991). The trial court found that the modifications conferred both benefit and detriment. Specifically, the court found: (1) the principal on the note was lowered; (2) the Pension Trust was no longer obligated to assist Van Pines in the collection of investor notes; and (3) Van Pines no longer received first payment for expenses related to collection of the investor notes. As there is evidence to support this finding, we cannot say that consideration did not exist.

■ ¶ 10 Alternatively, the trial court found that consideration was provided when Evergreen agreed to exercise its option to purchase additional nursery stock beyond the 44% required by its agreement. This type of third-party consideration is set forth in the RESTATEMENT (SECOND) OF CONTRACTS § 71(4). Appellants claim error in the trial court's reliance on this principle because no Pennsylvania case adopts this section of the Restatement. Because we agree with the trial court that consideration can be found under the traditional benefit/detriment standard, we need not reach this question at this time.[5]

¶ 11 Appellants next claim that the trial court erred in finding that the modifications to the July 28 agreement complied with the "good faith" standard of the Pennsylvania Commercial Code. *See* 13 Pa.C.S.A. § 2209, Uniform Commercial Code Comment. As there is no Pennsylvania case law interpreting the good faith requirement of the UCC, both parties analyze this issue by reference to *Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134 (6th Cir.1983), one of the leading federal court cases. The *Roth* court set forth a two-part inquiry for trial courts to use when determining whether a party acted in good faith in seeking modification: (1)

---

4. Since Appellants have not established the "actually litigated" requirement for collateral estoppel, we need not discuss the privity issue which is also argued in Appellants' brief.

5. Included in Appellants' argument on consideration and the following argument on good faith is a claim that the court erred by considering hearsay evidence in determining these issues. Although Appellants have set forth this issue in the Statement of Questions, there is no separate argument section developing this claim. Moreover, Appellants concede that no objection to this evidence was made at trial. Thus, the hearsay claim is waived. *Takes v. Metropolitan Edison Co.*, 548 Pa. 92, 695 A.2d 397 (1997) (counsel must make timely objection during trial to preserve claim for review); *Commonwealth v. Sneddon*, 738 A.2d 1026 (Pa.Super.1999) (issues not properly raised and developed will not be considered).

whether the party's conduct is consistent with reasonable commercial standards of fair dealing in the trade and (2) whether the parties were in fact motivated to seek modification by an honest desire to compensate for commercial exigencies. *Id.* at 146. In analyzing this second, "honesty in fact," requirement, the trier of fact must determine whether the means used to obtain the modification constitute extortion or overreaching. *Id.*

¶ 12 In *Roth*, the court found that Sharon Steel did not act in good faith because it obtained the modifications by threatening to breach the contract by raising prices for both hot and cold rolled steel when the contract permitted only a price increase for cold rolled steel. Appellants contend that the present case is identical to *Roth* because Evergreen threatened not to go through with the second closing unless the modifications were made. Presently, however, there was no requirement that Evergreen proceed with the second closing. Its agreement required purchase of the first 44% of the nursery stock but its purchase of any of the remainder was at its option. Thus, Evergreen was not threatening to breach the contract as it had the right not to purchase anything over the first 44%. Where a party is merely exercising a contractual right, rather than threatening to breach the contract, there is no bad faith. *See American Exploration Co. v. Columbia Gas Transmission Corp.*, 779 F.2d 310 (6th Cir.1985).

¶ 13 Because the modifications also affected the note signed at the first closing, Appellants claim that Evergreen's threat not to go through with the second closing was "a threat to blow up the [original] 44% itself" because of the lack of a tax opinion. Appellants' Brief at 56. While the lack of a tax opinion and Evergreen's failure to purchase more than the original 44% may indeed have adversely affected the tax advantages of the entire scheme, that is the way Appellants agreed to set up the deal. The trial court specifically noted that Parkinson was a sophisticated investor; he had previously engaged in other tax advantage transactions, was personally involved in the establishment of the transactions involved here, and was fully aware of the importance of the deal going through so all investors would obtain a tax advantage. Order of Court and Statement of Reasons, 12/31/99, at 9. Nevertheless, he chose to close on the first 44% without either a tax opinion or a guarantee that Evergreen would purchase anything more than the first 44%. That the ultimate deal did not turn out the way Parkinson expected it to does not require a finding of bad faith merely because Evergreen stated its intention of doing exactly what it was permitted to do by the agreement.[6]

¶ 14 Appellants also contend that the trial court erred in interpreting the contract so as to preclude their defense that Van Pines breached its contractual obligations. Appellants contend that two sections of the July 28, 1986, Agreement constituted a warranty that the Tax Reform Act of 1986, which was then pending, would not affect the future marketing of the nursery stock.

---

**6.** Appellants also claim that the lack of a tax opinion was not a legitimate commercial reason for insisting on the modification because it was not beyond Evergreen's control. Appellants claim that because the tax lawyers were hired by Evergreen, the issuance of the tax opinion was within Evergreen's control. Appellants cite no authority for their proposition that the tax lawyers' issuance of a favorable tax opinion would be within the control of the client who hired them. We must agree with Appellee that Evergreen was not in a position to compel the lawyers to issue a formal tax opinion if the lawyers felt they could not legitimately do so.

¶ 15 Section 6.5, the first section on which Appellants rely, provides that:

There are no legal or governmental actions, suits, or proceedings pending to which VAN is a party or to which the Nursery Stock [sic], which would prevent or interfere with the consummation of the transactions contemplated by this Agreement or which would affect the future cultivation, growing, harvesting or marketing of the Nursery Stock of PARKINSON. . . .

Appellants argue that the trial court failed to supply the obviously missing language and that the section should read "There are no legal or governmental actions, suits or proceedings pending to which [Van Pines] is a party or to which the Nursery Stock *or the leasehold interest in the Raven Valley Farm is subject. . . .*" [7] Appellants' Brief at 60. Even with this language added, however, we do not agree with Appellants that the trial court's interpretation of this section is incorrect.

 ¶ 16 The trial court found that the language "legal or governmental actions, suits or proceedings pending" was not intended to apply to the Tax Reform Act of 1986 (or other legislation) but rather was limited to lawsuits, administrative proceedings or other adversary proceedings. When interpreting contract language, specific provisions ordinarily will be regarded as qualifying the meaning of broad general terms in relation to a particular subject. *In re Alloy Manufacturing Co. Employees Trust*, 411 Pa. 492, 192 A.2d 394 (1963); *Musko v. Musko*, 447 Pa.Super. 150, 668 A.2d 561 (1995). Moreover, the disputed language must be taken not only in the context of all the language in the document but it must be considered as well against the background of the whole history of the transaction. *O'Neill*

*v. Keegan*, 376 Pa. 606, 103 A.2d 909 (1954).

¶ 17 The trial court correctly found that Van Pines could not be a party to a legislative event and that the general phrase "governmental action" is modified by the more specific items of "legal action, suits, or proceedings." Parkinson testified that the almost identical language in the Pension Trust/Evergreen Agreement was not a representation that there would be no changes in the tax laws. N.T., 8/27/98, at 35. On review of the entire record, it is clear that all parties were relying on the tax lawyers, and no one else, to determine what effect the tax laws would have on the various transactions. In view of the standards set forth above, we cannot say the trial court erred in its interpretation.

 ¶ 18 Appellants make a similar claim with regard to Section 10 of the Agreement. That section provides:

VAN agrees that between the date of this Agreement and the Initial Closing VAN will exercise its best efforts to manage and maintain the Nursery Stock consistent with the standard of horticultural nursing as practiced in the Commonwealth of Pennsylvania. VAN will, during such period, immediately notify PARKINSON of any material change in the operating or management practices with respect to the Nursery Stock, or any material change in the condition of the Nursery Stock or the business prospects with respect thereto.

The trial court found that this paragraph related only to the actual management and physical maintenance of the nursery stock and did not relate to any tax information. Contrary to Appellants' claim that the trial court reached this conclusion based on the

---

7. This is the language of an almost identical section contained in the September 16, 1986, Agreement between the Pension Trust and Evergreen.

heading used in the contract, the court specifically stated that it came to this conclusion from a plain reading of the agreement and consideration of the pertinent trial testimony, which established that Pocius, through Van Pines, had expertise concerning the nursery stock but was never responsible or expected to be responsible for rendering tax advice. This finding is amply supported by the record.

¶ 19 Finally, Appellants contend the trial court erred in striking their demand for a jury trial. Without citation to supporting case law, Appellants argue that the waiver of jury trial which was contained in the promissory notes is of no effect. We do not agree. It is well-settled that the right to a jury trial may be waived either by conduct or by express statement. *Krugh v. Lycoming Fire Ins. Co.*, 77 Pa. 15 (1874); *Rodney v. Wise*, 347 Pa.Super. 537, 500 A.2d 1187 (1985); *Warden v. Zanella*, 283 Pa.Super. 137, 423 A.2d 1026 (1980); *Downs v. Scott*, 201 Pa.Super. 278, 191 A.2d 908 (1963). Here, as in *Krugh*, the jury trial waiver is contained in the contract between the parties, *i.e.*, the promissory notes. We see no reason not to follow the principle set forth by the Supreme Court in *Krugh*. The trial court did not err in finding that Appellants waived their right to a jury trial.

¶ 20 Judgment affirmed.

¶ 21 BECK, J., concurs in the result.