# Williams v. Katawczik

C.P. of Allegheny County, no. GD00-9829.

*Matthew L. Kurzweg, William Pietragallo II* and *Alfred S. Pelaez,* for plaintiff.

*William M. Wycoff* and *Kevin P. Allen,* for defendant Katawczik.

*David L. McClenahan, Ellen L. Surloff* and *Michael S. Nelson,* for defendants Weir.

WETTICK, *J.,* October 2, 2001—Defendants' preliminary objections to plaintiff's amended complaint are the subject of this opinion and order of court. The amended complaint contains nine counts. Defendants contend that, as to each count, plaintiff has failed to state a cause of action against any of the defendants.

Prior to April 1, 1997, plaintiff was a shareholder of Ft. Pitt Acquisition Inc., owning 16,667 shares of common stock directly, and 13,332 shares of common stock under a voting trust. Plaintiff also held options to purchase 10,376 shares of common stock.

Prior to April 1, 1997, defendants owned and/or controlled less than 50 percent of Ft. Pitt's outstanding shares. However, they would own and/or control more than 50 percent of the corporate stock if they also owned and/or controlled plaintiff's shares.

Pursuant to an agreement dated April 1, 1997, plaintiff conveyed all of his direct shares, trust shares, and options to defendants Dennis M. Katawczik and Kevin T. Weir with one-half of the transferred shares being conveyed to Mr. Katawczik and the other half to Mr. Weir. In exchange for the sale of his shares, plaintiff received

an immediate payment of $70,660 and subsequent payments totaling $207,000 plus interest (*i.e.,* approximately $6.90/share).

The April 1, 1997 agreement (paragraph 4) included the following provision:

"In the event that Mr. Weir or Mr. Katawczik sell all or any part of the direct shares or the trust shares purchased hereunder prior to April 1, 1999 (such resold shares being referred to herein as the 'resold shares'), Mr. Weir and/or Mr. Katawczik, as the case may be, shall pay to Mr. Williams upon the closing of the sale of the resold shares an amount with respect to each resold share equal to the sale price of such resold share less $6.90."

Beginning in late 1997 or early 1998, Graham Webb International Limited Partnership engaged in negotiations with Mr. Katawczik and Mr. Weir (who now controlled Ft. Pitt) to acquire Ft. Pitt. In June or July 1998, Graham Webb indicated a willingness to purchase all of the Ft. Pitt stock for $45 million ($166 per share).[1] During the same period, Styling Technology Corporation also was engaged in negotiations with Mr. Katawczik and Mr. Weir to acquire control of Ft. Pitt.

In June or July 1998, Mr. Katawczik and Mr. Weir met with plaintiff for the purpose of seeking to modify paragraph 4 of the April 1, 1997 agreement. At the meeting, defendants allegedly stated that they would not convey any of the shares acquired from plaintiff to any purchaser until April 1, 1999, unless plaintiff would agree to cap the additional payment at $1 million. Plaintiff alleges that, neither at this meeting nor at any other time,

---

1. According to the complaint, there were approximately 270,000 outstanding shares of common stock of Ft. Pitt at this time. Defendants owned 157,880 shares (including the shares which plaintiff had sold to them). Complaint at 3-4, ¶¶16-17.

did defendants inform him of the details of any offers or of the fact that a sale could be readily effectuated as of the date of the meeting. Plaintiff alleges that in reliance on defendants' statements that they would not sell the stock until after April 1, 1999, unless plaintiff agreed to the modification, on July 14, 1998, plaintiff executed a first amendment to the April 1, 1997 agreement which reads, in relevant part, as follows:

"(1) *Amendment to section 4.* Section 4 of the agreement is hereby amended by adding the following sentence at the end:

"Notwithstanding anything herein to the contrary, in no case shall Mr. Williams be entitled to receive in excess of $1,000,000 in the aggregate as a result of the provisions of this section 4.

"(2) *Confirmation of agreement.* Except as expressly provided herein, the agreement shall remain unamended and in full force and effect."

On July 15, 1998, defendants entered into an agreement to convey all the shares which they owned (including the shares purchased from plaintiff) to Styling for $30 million. The closing occurred on August 3, 1998. If the April 1, 1997 agreement had not been amended, plaintiff would have been entitled to $183.12 for each share (approximately $6.4 million). Because of the amendment, plaintiff received only $1 million. In this lawsuit, plaintiff seeks to recover the additional $5.4 million that he would have received if the agreement had not been modified.

## I.

I initially consider the preliminary objections to Count VI (unjust enrichment) and Count IX (unjust enrichment). In Count VI, plaintiff alleges that defendants were unjustly enriched because plaintiff has not been fully compensated for the value of his shares. I am dismissing this

count. The parties' relationship is governed by the April 1, 1997 agreement and the July 14, 1998 first amendment to agreement; thus, plaintiff's claim is governed by principles of contract law. See case law holding that the doctrine of unjust enrichment is not applicable where the relationship is governed by a contract. *Mitchell v. Moore,* 729 A.2d 1200, 1203 (Pa. Super. 1999); *First Wisconsin Trust Co. v. Strausser,* 439 Pa. Super. 192, 202 n.2, 653 A.2d 688, 693 n.2 (1995); *Coldwell Banker Phyllis Rubin Real Estate v. Romano,* 422 Pa. Super. 319, 329-30, 619 A.2d 376, 381 (1993); *Birchwood Lakes Community Association Inc. v. Comis,* 296 Pa. Super. 77, 86, 442 A.2d 304, 309 (1982).

In Count IX, plaintiff contends that defendants will be unjustly enriched in the event that certain rulings are made in defendants' favor in a pending lawsuit at GD98-19726. These rulings have not been made, so the alleged unjust enrichment has not occurred. Consequently, this count is dismissed without prejudice.

## II.

I next consider the breach of contract claims raised in Counts V and VIII. Many of plaintiff's claims are based on plaintiff's contention that defendants had a duty to make reasonable efforts to complete a sale of the stock prior to April 1, 1999.

Plaintiff alleges that plaintiff and defendants understood that the original paragraph 4 was not an open-ended option to defendants to, at their discretion, postpone the sale of the company to April 1, 1999, if there was a substantial offer prior to April 1, 1999. Instead, defendants had a duty to market the stock throughout this two-year period and to accept any offer that they would have been expected to accept.

Plaintiff seeks to offer parol evidence showing that the parties did not bargain over the purchase price for plaintiff's shares because the parties understood that defendants had a duty to aggressively market the stock now that they were in a position to sell a controlling interest. Both plaintiff and defendants expected that there would be offers that far exceeded the purchase price. The purchase price was only a nominal price that plaintiff would receive if it turned out (contrary to the expectations of the parties) that there was not a market for the stock. The core of the transaction was defendants' duty to market the stock and plaintiff's right to the additional proceeds described in paragraph 4.

Defendants contend that this testimony is barred by the parol evidence rule. The April 1, 1997 agreement contains an integration clause (paragraph 5A). The agreement (paragraph 5D) also states that the parties to the agreement acknowledge that the agreement has been reviewed and approved by the parties' respective legal counsel.

The April 1, 1997 agreement does not contain any language which suggests that defendants had any obligation to market their controlling interest in the corporation or to sell their stock if they received an offer that substantially exceeded the price they paid for plaintiff's stock. Under the plain language of the agreement, defendants had to share with plaintiff money that they received from the sale of the stock only if defendants chose to sell the stock within two years. Plaintiff seeks, through parol evidence, to add a requirement that would materially alter the nature of the transaction which the writing describes. Parol evidence cannot be introduced to change the nature of the transaction described in a writing with an integration clause. Because a writing with an integration clause is intended to be a complete expression of the parties' agreement, parol evidence cannot be offered

as to a matter that would normally have been included in the writing. *Kehr Packages Inc. v. Fidelity Bank, National Association,* 710 A.2d 1169, 1174 (Pa. Super. 1998).

For these reasons, the agreement between the parties must be construed by considering only its clear and unambiguous language: Defendants had no obligation to market or sell the stock in the period between April 1, 1997 and April 1, 1999.

Plaintiff correctly states that every contract imposes a duty of good faith and fair dealing in its performance. The Pennsylvania appellate courts have adopted section 205 of the Restatement (Second) of Contracts which provides that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." See *Kaplan v. Cablevision of PA Inc.,* 448 Pa. Super. 306, 318, 671 A.2d 716, 721-22 (1996), and cases cited therein.

The duty of good faith arises under the law of contracts. The law implies "an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract." *Somers v. Somers,* 418 Pa. Super. 131, 137-38, 613 A.2d 1211, 1214 (1992). (citation omitted)

However, this duty of good faith is not breached whenever a party is merely exercising a contractual right, rather than threatening to breach the contract. *Eighth North-Val Inc. v. Parkinson D.D.S. P.C. Pension Trust,* 773 A.2d 1248, 1254 (Pa. Super. 2001). The duty of good faith does not compel a party to surrender rights which it has been given by the terms of the contract. A party does not violate a duty of good faith because it enforces a provi-

sion in a contract which is very favorable to that party. *Creeger Brick and Building Supply Inc. v. Mid-State Bank and Trust Co.,* 385 Pa. Super. 30, 37, 560 A.2d 151, 154 (1989). Consequently, since defendants' agreement with plaintiff did not impose any duty on defendants to sell their stock prior to April 1999, the duty of good faith did not alter the right which the contract gave to defendants to postpone efforts to sell the stock until April 1999.

The duty of good faith imposed on defendants is only a duty to act in good faith with respect to any sale occurring prior to April 1, 1999. Under paragraph 4 of the April 1, 1997 agreement, plaintiff had a contractual right to additional money if a sale occurred prior to April 1, 1999. The duty of good faith imposed on defendants an obligation to refrain from doing anything that would destroy or injure plaintiff's right to receive the fruits of the contract.

If, at the time defendants approached plaintiff about a modification to the contract, defendants had not received any offers that they would accept unless plaintiff would agree to accept a lesser amount, the modification would have been sought in good faith. With this modification, there would have been an increased likelihood of a sale prior to April 1999. Thus, the modification would inure to the benefit of both plaintiff and defendants. *Eighth North-Val Inc. v. Parkinson, supra,* 773 A.2d at 1254. Such a modification would not have breached defendants' obligation to refrain from doing anything that would destroy or injure plaintiff's right to receive the fruits of the contract because of the likelihood that plaintiff would not be receiving any additional money if he did not agree to the modification.

Assume, instead, the evidence will show (as plaintiff alleges) that at the time defendants were seeking the

modification, there was at least one offer that they expected to accept prior to April 1999 even if the agreement was not modified. Their purpose for approaching plaintiff was to pay a lesser amount than the amount that was provided for in their contract with plaintiff; it was not to pave the way for a transaction that would not otherwise have taken place.

In this instance, defendants would have breached their duty of good faith because through the modification, defendants were seeking to alter the bargain solely for their own benefit while indicating to plaintiff that plaintiff would also benefit from the modification.

I would reach the same result if this transaction had been governed by the Uniform Commercial Code. See *e.g., id.* at 1253-54, which applied the modification provisions of the Uniform Commercial Code to a financial transaction. Modification of a contract governed by the Uniform Commercial Code must meet the test of good faith: "The effective use of bad faith to escape performance on the original contract terms is barred, and the extortion of a 'modification' without legitimate commercial reason is ineffective as a violation of the duty of good faith." U.C.C. §2209 cmt. 2, 13 Pa.C.S. §2209.

Plaintiff also alleges that the modification is unenforceable for failure of consideration. A promise is supported by consideration if it confers a benefit upon the promisor or causes a detriment to the promisee. *Dahar v. Grzandziel,* 410 Pa. Super. 85, 90, 599 A.2d 217, 219 (1991).

If there is a reasonable likelihood that defendants would not have sold the stock prior to April 1, 1999 without an agreement of a $1 million cap, there is consideration for the July 14, 1998 modification. If, on the other hand, defendants fully intended to sell the stock prior to April 1, 1999, even if paragraph 4 was not amended,

there is no consideration for the modification. See *e.g.,* Restatement (Second) of Contracts §73 cmt. c, *illus.* 4:

"(4) A, an architect, agrees with B to superintend a construction project for a fixed fee. During the course of the project, without excuse, A takes away his plans and refuses to continue, and B promises him an extra fee if A will resume work. A's resumption of work is not consideration for B's promise of an extra fee."

Defendants rely on the Uniform Written Obligations Act of May 13, 1927, P.L. 985, 33 P.S. §6, which provides that a written promise "shall not be invalid or unenforceable for lack of consideration, if the writing also contains an additional express statement, in any form of language, that the signer intends to be legally bound." This Act does not apply because the case law construes this legislation only to remove lack of consideration as a ground for enforcing the contract. "Failure of consideration, on the other hand, goes to the heart of any claim based on an agreement and is always available as a defense to that claim." *McGuire v. Schneider Inc.,* 368 Pa. Super. 344, 350, 534 A.2d 115, 118 (1987). (citation omitted)

A lack of consideration means that no consideration was intended to pass. A failure of consideration means that consideration was intended, but not received. *SKF USA Inc. v. W.C.A.B. (Smalls),* 714 A.2d 496, 501 (Pa. Commw. 1998). The present case involves a failure of consideration because plaintiff intended for consideration to pass; plaintiff executed the agreement modifying paragraph 4 in order to receive money that he might not have otherwise received. If defendants were intending to sell the stock even if plaintiff did not modify the agreement, no consideration passed to plaintiff in return for his modifying the agreement.

Any other breach of contract claims raised in Counts V and VIII are dismissed. The breach of contract claims, if any, raised against Carol M. Weir are dismissed because she is not a party to the contract.

Claims for punitive damages are dismissed because Pennsylvania does not award punitive damages for a bad faith breach of contract. *Johnson v. Hyundai Motor America,* 698 A.2d 631, 639 (Pa. Super. 1997); *Standard Pipeline Coating Co. Inc. v. Solomon & Teslovich Inc.,* 344 Pa. Super. 367, 375, 496 A.2d 840, 844 (1985). Claims for attorneys' fees are dismissed because the parties' agreements do not provide for the award of attorneys' fees and there is no statute or rule providing for the award of attorneys' fees. *Gardner v. Clark,* 349 Pa. Super. 297, 301, 503 A.2d 8, 10 (1986).

### III.

I next consider Count VII—mistake/fraud in the execution of the agreement.

Paragraph 4 of the April 1, 1997 agreement covers only the "direct shares or the trust shares purchased hereunder." It does not refer to the option shares. In Count VII, plaintiff alleges that the parties agreed that plaintiff would receive an amount equal to the sales price less $6.90 for the option shares as well as the other shares. Option shares were omitted from paragraph 4 because of a mistake and/ or defendants' fraud in procuring execution of this agreement.

There are no factual allegations in the complaint that would support a finding that the agreement is the product of defendants' fraud in procuring execution of the agreement.

Plaintiff is claiming a mistake on the part of both parties—*i.e.,* both parties intended to execute a writing that included option shares in paragraph 4 of the April 1, 1997

agreement. Section 155 of the Restatement (Second) of Contracts governs the reformation of a writing to reflect the actual agreement of the parties. This section reads as follows:

"Section 155. When mistake of both parties as to written expression justifies reformation

"Where a writing that evidences or embodies an agreement in whole or in part fails to express the agreement because of a mistake of both parties as to the contents or effect of the writing, the court may at the request of a party reform the writing to express the agreement, except to the extent that rights of third parties such as good faith purchasers for value will be unfairly affected."

Plaintiff is entitled to pursue this claim. A mutual mistake will afford a basis for reforming a contract. However, the moving party is required to show the existence of a mutual mistake by evidence that is clear, precise, and convincing. *West Conshohocken Restaurant Associates Inc. v. Flanigan,* 737 A.2d 1245, 1248 (Pa. Super. 1999); *Smith v. Thomas Jefferson University Hospital,* 424 Pa. Super. 41, 45, 621 A.2d 1030, 1032 (1993).

## IV.

I next consider defendants' preliminary objections to Counts II (fraud/economic duress/coercion), Count III (negligent misrepresentation), and Count IV (conspiracy).

Plaintiff raises two fraud claims: (1) the failure to disclose and (2) the making of a false statement that defendants would not sell until April 1, 1999, unless the agreement was modified.

I find no basis for the fraud claims based solely on a failure to disclose the nature, amount, and details of any offer. Plaintiff does not allege that he requested defendants to provide any information concerning offers from

potential buyers. Plaintiff contends only that defendants had a duty to advise him of the current state of their negotiations with potential buyers.

I agree with defendants that plaintiff knew that defendants had received or were likely to receive offers that, if accepted, would result in plaintiff receiving more than $1 million under the provisions of the April 1997 agreement. Otherwise, there would have been no reason for defendants to have sought the amendment. Consequently, a fraud claim cannot be based on defendants' failure to advise plaintiff that if plaintiff agreed to the modification they were likely to enter into such a transaction prior to April 1, 1999 (*i.e.,* a fraud claim cannot be based on a failure to disclose to a party what that party already knew).

In this case, defendants approached plaintiff at a time when they allegedly were in a position to sell the stock immediately through a transaction that would provide very substantial sums of money to plaintiff and defendants. However, defendants stated to plaintiff that they would not be selling the stock until April 1, 1999, or later unless the agreement was modified.

If the fact-finder determines that defendants, prior to the modification, had received or knew that they would receive offers that they would not turn down (*i.e.,* they would not have waited, even if the April 1997 agreement was not amended, there has been a misrepresentation (the false statement that defendants will not be selling the stock prior to April 1999 unless plaintiff modifies the agreement) upon which plaintiff may have justifiably relied.[2] See *Germantown Manufacturing Co. v.*

2. The case law holding that a fraudulent misrepresentation claim may not be based on the breach of a contract to do something in the future does not apply because plaintiff's claim is not based on the

*Rawlinson,* 341 Pa. Super. 42, 49, 491 A.2d 138, 142 (1985) (the requirement of materiality is usually met by showing that the misrepresentation would have been likely to have induced a reasonable person to make the contract). In addition, if there were outstanding or anticipated offers which plaintiff, under a reasonable person standard, would have believed that defendants would have accepted prior to April 1999 without an amendment to paragraph 4, defendants' failure to describe the offers, coupled with the statement that without an agreement to accept a $1 million cap the stock will not be sold prior to April 1999, may constitute a fraudulent omission.

In their brief, defendants state "the very fact that the defendants proposed an amendment with such a high cap would have made it patently obvious to any reasonable person that the defendants had received or anticipated receiving an offer so substantial that it would have entitled Williams to more than $1,000,000 under the unamended agreement. The defendants' request for the amendment *was,* effectively, a disclosure of the existence of an offer or offers." (Defendants' brief at 14.) I agree. Thus, plaintiff could not pursue a fraud claim if defendants had only sought a modification.

However, defendants did more. They made statements which were intended to cause plaintiff to believe that defendants had not received and did not anticipate receiving any offers that they could not resist unless the agreement was modified. The fraud claims that plaintiff may pursue arise out of these statements.

---

breach of a promise to do something in the future. Instead, it is based on defendants inaccurately describing the current situation (*i.e.,* at this time we have not received and do not anticipate any offers that we will accept unless paragraph 4 is modified).

I am dismissing claims for counsel fees because there is no exception to the rule that each party is responsible for its own counsel fees which permits recovery of counsel fees in an action for fraud. *Koffman v. Smith,* 453 Pa. Super. 15, 34, 682 A.2d 1282, 1292 (1996); *Pittsburgh Live Inc. v. Servov,* 419 Pa. Super. 423, 430, 615 A.2d 438, 442 (1992). I am dismissing the punitive damage claim because the fraudulent conduct that supports an award of compensatory damages is insufficient to support an award of punitive damages without more; to justify an award of punitive damages, there must be "acts of malice, vindictiveness and a wholly wanton disregard of the rights of others." *Id.* Plaintiff's complaint does not describe such conduct.

I am dismissing the claims, if any, against Ms. Weir because she is not described as a participant in the fraud.

I am dismissing the duress/coercion claims. The alleged duress was of a purely economic nature and plaintiff does not allege that he did not have the opportunity to consult with counsel prior to signing the amendment. See *Degenhardt v. Dillon Co.,* 543 Pa. 146, 157, 669 A.2d 946, 952 (1996); *SKF USA Inc. v. W.C.A.B. (Smalls), supra,* 714 A.2d at 501.

I am dismissing Count IV (conspiracy) except for the portion of the count that is based on those fraudulent misrepresentation claims that I am permitting plaintiff to pursue.

## V.

I am sustaining defendants' preliminary objections to Count I (action for declaratory relief) except for declaratory relief based on those breach of contract, reformation, and tort claims that I am permitting plaintiff to pursue.

## ORDER

On October 2, 2001, upon consideration of defendants' preliminary objections, it is ordered that:

(1) defendant Carol M. Weir is dismissed as a party as to all claims;

(2) all claims for punitive damages and counsel fees are stricken;

(3) Count VI is dismissed with prejudice and Count IX is dismissed without prejudice; and

(4) plaintiff may pursue the claims in the remaining counts only to the extent permitted in the opinion which accompanies this order of court.